## RE-DIRECT EXAMINATION

MR. MONTGOMERY:

Q        BARBARA, ARE YOU FAIRLY CERTAIN IT WAS AROUND TWO O'CLOCK WHEN HE GOT BACK WHEN YOU GOT UP?

A        IT WAS APPROXIMATELY TWO O'CLOCK.

Q        OKAY, IT COULD HAVE BEEN LATER OR A LITTLE BIT EARLIER?

A        THAT'S RIGHT.

Q        BARBARA, YOU SAID THAT YOU DIDN'T REMEMBER TOO WELL; DO YOU REMEMBER THAT YOU GAVE A STATEMENT TO THE POLICE ON AUGUST THE 6TH I BELIEVE WHICH WAS A WEDNESDAY?

A        YES, I DO.

Q        AND YOUR MEMORY WAS GOOD AT THAT TIME BECAUSE IT WAS RIGHT AFTER THIS HAPPENED?

A        THAT'S RIGHT.

Q        AND YOU TESTIFIED TO THE SAME THING TODAY AS WHAT YOU GAVE IN THAT STATEMENT, IS THAT NOT TRUE?

A        THAT'S TRUE.

Q        ARE YOU PREGNANT BY THE DEFENDANT OR HAVE YOU EVER BEEN PREGNANT BY THE DEFENDANT?

A        NO.

MR. KESLER:

        I OBJECT, YOUR HONOR, I DON'T BELIEVE THAT'S PROPER FOR THE SCOPE OF RE-DIRECT.

THE COURT:

        SUSTAINED.

MR. MONTGOMERY:

        YOUR HONOR, WE WOULD BRING HER ON REBUTTAL THEN; THAT'LL BE FINE.

THE COURT:

        ALL RIGHT, LET THE WITNESS COME DOWN.

208

MR. MONTGOMERY:

      YOUR HONOR, THE STATE WOULD REST IN CHIEF.

MR. SAMS:

      I HAVE A MOTION TO MAKE, MAY IT PLEASE THE COURT?

THE COURT:

      ALL RIGHT, THE JURY WILL BE REQUIRED TO GO INTO
THE JURY ROOM; THE BAILIFFS WILL SHOW THEM INTO THE
JURY ROOM.

               (JURY OUT)

THE COURT:

      YOU MAY STATE YOUR MOTION.

MR. SAMS:

      COMES NOW THE DEFENDANT BY COUNSEL AND MOVES THE
COURT TO EXCLUDE THE EVIDENCE OFFERED ON BEHALF OF THE STATE
OF MISSISSIPPI AND DIRECT THE JURY TO FIND THE DEFENDANT NOT
GUILTY AND FOR REASON SAYS THAT THE STATE OF MISSISSIPPI HAS
FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT THE DEFENDANT
HEREIN WAS THE PARTY WHO CAUSED OR BROUGHT ABOUT THE DEATH OF
THE DECEDENT, AND FOR THE FURTHER REASON THE STATE OF
MISSISSIPPI HAS FAILED TO SHOW BEYOND A REASONABLE DOUBT, AND
TO A MORAL CERTAINTY THAT THE COMMISSION OF THE BURGLARY
COINCIDED WITH THE DEATH OF THE DECEDENT, AND FOR THE FURTHER
REASON THAT THE STATE OF MISSISSIPPI HAS FAILED TO PROVE
BEYOND A REASONABLE DOUBT AND TO A MORAL CERTAINTY THAT THE
DEFENDANT, MACK ARTHUR KING, WAS GUILTY OF A FELONY.   THIS
CONCLUDES OUR MOTION.

THE COURT:

      THE MOTION WILL BE OVERRULED.

MR. SAMS:

      THE DEFENSE RESTS.

THE COURT:

> DO YOU WANT TO MOVE TO VOIR DIRE THE JUROR?

MR. SAMS:

> YES, SIR.   COMES NOW THE DEFENDANT HAVING RESTED AND REASSERTS ALL OF THE GROUNDS HERETOFORE MADE AT THE CONCLUSION OF THE STATE'S PROOF.

THE COURT:

> OVERRULED.

MR. SAMS:

> COMES NOW THE DEFENDANT AND MOVES THAT THE JUROR, MRS. MARY CASTLEBURY HOLLEY, BE BROUGHT FROM THE JURY ROOM TO BE EXAMINED IN ACCORDANCE WITH THE MOTION HERETOFORE MADE WHEN MR. COVINGTON HIMSELF WAS ON THE STAND.

THE COURT:

> THE MOTION WILL BE SUSTAINED.  BAILIFF, WOULD YOU GET MRS. HOLLEY, AND BRING MRS. HOLLEY IN.

> > (JUROR BROUGHT TO COURTROOM)

THE COURT:

> MRS. HOLLEY, WOULD YOU STEP UP HERE AND TAKE THE STAND, PLEASE, MA'AM.  YOU WERE UNDER OATH TO ANSWER QUESTIONS FROM THE COURT AND THE ATTORNEYS AND YOU'RE STILL UNDER OATH.  A MATTER HAS COME UP THAT THE DEFENSE COUNSEL WISHES TO QUESTION YOU ABOUT.

> > MARY HOLLEY,

> A JUROR, HAVING BEEN PREVIOUSLY SWORN, TESTIFIED AS FOLLOWS:

QUESTIONING BY MR. SAMS:

Q        YOU ARE MARY HOLLEY?

A        YES, SIR.

Q     WHO IS YOUR FATHER, MRS. HOLLEY?

A     MY FATHER?

Q     YES, MA'AM.

A     ELTON CASTLEBURY.

Q     MRS. HOLLEY, WHOM --TO WHOM ARE YOU MARRIED NOW?

A     TOM HOLLEY.

Q     AND TO WHO --WHO WERE YOU MARRIED TO BEFORE?

A     JIMMY COVINGTON.

Q     HE IS A MEMBER OF THE SHERIFF'S OFFICE BEING A
DEPUTY SHERIFF, IS THAT NOT TRUE?

A     YES.

Q     TO THE MARRIAGE BETWEEN YOU AND JIMMY COVINGTON HOW
MANY CHILDREN WERE BORN?

A     TWO.

Q     AND I BELIEVE THEY'RE LITTLE BOYS, IS THAT CORRECT?

A     YES.

Q     UNDER THE DECREE OF THE DIVORCE I BELIEVE JIMMY
PAYS CHILD SUPPORT AND HE COMES AND VISITS HIS CHILDREN?

A     NO, HE DOES NOT.

Q     HE DOESN'T COME AND SEE HIS CHILDREN?

A     NO.

Q     BUT DURING THE TIME THAT YOU WERE MARRIED TO HIM
WAS HE A MEMBER OF THE SHERIFF'S MOUNTED PATROL?

A     NO.

Q     HE WAS NOT?

A     NO.

Q     DO YOU RECALL THE QUESTION YESTERDAY ABOUT WHETHER
YOU WERE RELATED BY BLOOD OR MARRIAGE NOW OR IN THE PAST TO
ANY MEMBER OF LAW ENFORCEMENT; DID YOU UNDERSTAND THAT THAT
COULD HAVE INCLUDED THIS PARTICULAR INDIVIDUAL?

A     NO, I DID NOT.

211                    Holley/DE/CE

Q       You do acknowledge that you did not raise your hand at that time; you do acknowledge that you didn't raise your hand?

A       I don't recall the question that --

Q       You don't recall the question; all right, Mrs. Holley, who's your dad, I may have asked you?

A       Elton Castlebury.

Q       And, Mrs. Holley, do you know a one, G. B. Green, Sr.?

A       Yes.

Q       Is he a next door neighbor of your dad's?

A       Yes.

Q       Is there current litigation going on between them over a pond in the Supreme Court of the State of Mississippi?

A       Not that I know of.

MR. SAMS:

        I've got no further questions of this witness.

QUESTIONING BY MR. HOWARD:

Q       Did you know that Joe Sams, Jr., the lawyer that just questioned you, represented Mr. Green at all against your father?

A       No, I didn't.

Q       And that would have been the reason you didn't respond when Mr. Sams asked you yesterday if any --if he represented anybody in lawsuits against you or any other members of the jury or their families?

A       Yes, sir. Can I say something?

Q       Sure.

A       I --the --the last that --the last time that Mr. Green sued my father I thought it was Mr. Burgin.

212                    HOLLEY/CE

Q        YOU DIDN'T KNOW ANYTHING ABOUT JOE SAMS BEING
INVOLVED, DID YOU?

A        NO.

Q        AND THAT WOULDN'T HAVE --WOULD THAT HAVE INFLUENCED
YOUR VERDICT ANYWAY; YOU WOULD HAVE BASED YOUR VERDICT SOLELY
ON THE EVIDENCE AND THE TESTIMONY YOU HEARD FROM THE WITNESS
STAND IN THIS CASE, WOULDN'T YOU?

A        YES, SIR.

Q        YOU WERE MARRIED TO JIMMY COVINGTON, IS THAT
CORRECT?

A        YES, I WAS.

Q        AND HE'S NOT --HE IS PRESENTLY A MEMBER OF THE
LOWNDES COUNTY SHERIFF'S OFFICE, IS THAT CORRECT?

A        YES.

Q        MRS. HOLLEY, WAS HE EVER ASSOCIATED WITH LAW
ENFORCEMENT WHILE YOU WERE MARRIED TO HIM?

A        HE MAY HAVE BEEN IN THE --IN THE SHERIFF'S POSSE,
BUT I DON'T REMEMBER FOR SURE.

Q        WAS HE A SWORN DEPUTY SHERIFF OR ANYTHING LIKE
THAT THAT YOU KNOW OF, MRS. HOLLEY?

A        NOT THAT I KNOW OF.

Q        THEN YOU DON'T EVEN REMEMBER MR. SAMS EVEN ASKING
A QUESTION ABOUT BEING RELATED TO MEMBERS OF LAW ENFORCEMENT,
DO YOU?

A        NO.

Q        IF --

A        I --I REMEMBER HIM ASKING IF YOU WERE RELATED TO
SOMEONE WHO IS IN LAW ENFORCEMENT.

Q        BUT YOU ARE NOT RELATED TO ANYONE THAT'S IN LAW
ENFORCEMENT, IS THAT CORRECT?

A        NO.

Q      EVEN IF YOU WERE WOULD THAT HAVE INFLUENCED YOUR
VERDICT IN THIS CASE?

A      NO.

Q      WOULD YOU BASE YOUR VERDICT SOLELY ON THE EVIDENCE
AND THE TESTIMONY THAT YOU'VE HEARD IN THE LAST TWO DAYS?

A      YES, SIR.

Q      DO YOU FEEL THAT YOU COULD BE FAIR AND IMPARTIAL
TO THE STATE OF MISSISSIPPI AND TO MACK ARTHUR KING IN THIS
CASE?

A      YES, SIR.

Q      AND BASE YOUR VERDICT ON THE EVIDENCE?

A      YES.

MR. HOWARD:

       NOTHING FURTHER, JUDGE.

QUESTIONING BY COURT:

Q      MRS. HOLLEY, APPARENTLY NOW IT'S COME OUT THAT MR.
SAMS DOES REPRESENT MR. GREEN AGAINST YOUR FATHER, WOULD THAT
INFLUENCE YOU IN ANYWAY IN THE TRIAL OF THIS CASE, IF THAT
WERE TRUE?

A      NO, SIR.

Q      AND WHILE YOU WERE MARRIED TO MR. COVINGTON, AS FAR
AS YOU KNOW HE WAS NOT INVOLVED IN LAW ENFORCEMENT?

A      HE MAY HAVE BEEN A MEMBER OF THE SHERIFF'S POSSE;
OTHER THAN THAT, NO.

Q      WOULD THAT --EVEN IF HE HAD BEEN A MEMBER OF THE
SHERIFF'S POSSE, WOULD THAT INFLUENCE YOU IN ANYWAY?

A      NO, SIR.

Q      DO YOU HAVE ANY PARTICULAR FEELINGS FOR MR.
COVINGTON NOW THAT WOULD INFLUENCE YOU IN ANYWAY?

A      NO, SIR.

214

THE COURT:

    ALL RIGHT, YOU MAY RETURN TO THE JURY ROOM.

MR. SAMS:

    YOUR HONOR, WE'RE GOING TO SPECIFICALLY AT THIS TIME OBJECT TO THE --THE JUROR BEING ALLOWED TO RETURN. NOW, THAT SHE'S BEEN ADVISED THAT I'VE GOT A LAWSUIT AGAINST HER DAD BECAUSE THIS IS A CAPITAL MURDER CASE, AND FOR HER TO RETURN NOW, YOU KNOW, FRESH WITH THE KNOWLEDGE THAT I'M INVOLVED AGAINST HER FATHER I THINK WOULD BE EXTREMELY DETRIMENTAL AND HARMFUL TO THE INTEREST OF THIS DEFENDANT.

THE COURT:

    I BELIEVE SHE'S TESTIFIED UNDER OATH THAT THIS WOULD NOT AFFECT HER IN ANY MANNER.

MR. SAMS:

    WELL, WE THINK THAT --WE THINK THAT --THAT THOUGH SHE SPEAKS WITH COMPLETE CANDOR AND HONESTY, I'M SURE, THAT THE SUBCONSCIOUS KNOWLEDGE THAT I'VE GOT AN ONGOING LITIGATION AGAINST HER OWN FATHER HAS GOT TO HAVE SOME AFFECT, AND THIS IS, OF COURSE, A COURT APPOINTED CASE, AND IT'S A CAPITAL CASE, AND I'M VERY CONCERNED ABOUT IT.

THE COURT:

    WHAT DOES THE STATE FEEL?

MR. HOWARD:

    YOUR HONOR, THIS JUROR ANSWERED THE QUESTIONS THAT SHE WOULD BE FAIR TO BOTH PARTIES, AND THAT'S ALL THE STATE EVER WANTS IS A FAIR JUROR, AND SHE SAID THAT SHE WOULD BE FAIR, AND THAT'S WHAT WE WANT. I BELIEVE THIS LAWSUIT THING IS IN THE SUPREME COURT; IT'S NOT A --IT'S A PAPER LAWSUIT NOW, YOUR HONOR, AND NOT --NOT ANY CIRCUIT COURT LITIGATION OR ANY WITNESSES INVOLVED, YOUR HONOR.

215

THE COURT:

ALL RIGHT, THE MOTION WILL BE OVERRULED.
YOU MAY RETURN TO THE JURY ROOM, MRS. HOLLEY.

(JUROR RETURNS TO JURY ROOM)

THE COURT:

ALL RIGHT, THE DEFENDANT HAS RESTED; THE STATE HAS
RESTED; LET'S GO OVER THE INSTRUCTIONS.

ANY OBJECTION TO INSTRUCTION S-1?

MR. SAMS:

NO OBJECTION.

THE COURT:

BEING NO OBJECTION, S-1 WILL BE GIVEN.
ANY OBJECTION TO INSTRUCTION S-2?

MR. SAMS:

WE BELIEVE THAT THE EVIDENCE BEING CIRCUMSTANTIAL
THAT IT SHOULD READ, "REASONABLE DOUBT AND TO A
MORAL CERTAINTY."

MR. HOWARD:

I'D LIKE TO BE HEARD ON THAT, JUDGE.

THE COURT:

THE OBJECTION WILL BE OVERRULED, INSTRUCTION S-2
WILL BE GIVEN.
ANY OBJECTION TO S-3?

MR. SAMS:

NO, SIR, WE'LL HAVE NO OBJECTION TO THAT, BUT WE
WILL WANT TO FILE AN ADDITIONAL INSTRUCTION BASED
UPON THAT.

THE COURT:

BEING NO OBJECTION, S-3 WILL BE GIVEN.
ANY OBJECTION TO INSTRUCTION S-4?

216

MR. SAMS:

> ONLY WITH THE --WITH THIS PARTICULAR VIEW IN MIND
> IT'S COME TO OUR ATTENTION THAT BECAUSE OF THE
> PARTICULAR PHRASEOLOGY OF THE CAPITAL MURDER
> STATUTE, THAT THE INSTRUCTION SHOULD READ THAT THE
> JURY COULD FIND THE DEFENDANT GUILTY OF CAPITAL
> MURDER, NOT GUILTY OF CAPITAL MURDER, OR --AND THEY
> COULD ALSO ADDITIONALLY FIND, IF THEY FOUND HIM
> NOT GUILTY OF CAPITAL MURDER, THEY COULD FIND HIM
> GUILTY OR NOT GUILTY OF BURGLARY. IT COULD BE A
> LESSER INCLUDED CHARGE OF CAPITAL MURDER.

MR. HOWARD:

> I DIDN'T SUBMIT A LESSER INCLUDED, YOUR HONOR, AND--

MR. SAMS:

> WE WILL WANT TO SUBMIT ONE, MAY IT PLEASE THE COURT
> I ASSUMED THERE WOULD BE ONE.

MR. HOWARD:

> I'M GOING TO OBJECT TO IT, YOUR HONOR, WHEN IT IS
> SUBMITTED. THE INDICTMENT DOES NOT SET FORTH THE
> ELEMENTS OF THE CRIME OF BURGLARY.

THE COURT:

> ALL RIGHT, S-4 WILL BE GIVEN.
> THE DEFENDANT'S INSTRUCTIONS --

MR. SAMS:

> WELL, YOU GAVE S-3 WHICH DEFINED BURGLARY, SO
> YOU'VE GOT THAT IN THERE. NOW, I'VE GOT TO COME
> BACK THROUGH IT.

THE COURT:

> THE DEFINITION OF BURGLARY IS SHOWING THAT THE
> STATE DOES NOT HAVE TO PROVE PREMEDITATION OR
> MALICE AFORETHOUGHT.

310

217

MR. SAMS:

> YES, SIR, I WAS DIRECTING YOUR ATTENTION TO S-3;
> "THE COURT INSTRUCTS THE JURY THAT BURGLARY AS
> MENTIONED IN THESE INSTRUCTIONS OF BREAKING AND
> ENTERING OF A DWELLING HOUSE OF ANOTHER AT ANYTIME
> WITH THE INTENT TO COMMIT A CRIME ONCE INSIDE THE
> SAID DWELLING." NOW, ONCE THEY'VE DEFINED AND
> GIVEN A DEFINITION OF IT, I THINK THAT WE NEED TO
> HAVE AN INSTRUCTION COVERING THE JURY VERDICT.
> THAT'S MY POSITION.

THE COURT:

> ALL RIGHT, YOU HAVE YOUR POSITION IN THE RECORD.
> DOES THE STATE HAVE ANY OBJECTION TO INSTRUCTION
> D-1?
> I HAVE ALREADY TOLD THEM THAT, BUT I WILL GIVE IT
> ANYWAY.

MR. HOWARD:

> THE STATE DOESN'T HAVE ANY OBJECTION THEN, JUDGE.

THE COURT:

> DOES THE STATE HAVE ANY OBJECTION TO INSTRUCTION
> D-2?

MR. HOWARD:

> YOUR HONOR, THE STATE WOULD OBJECT TO D-2;
> SPECIFICALLY THE STATE WOULD OBJECT TO THE GIVING
> OF THE TWO THEORY OR CIRCUMSTANTIAL INSTRUCTION IN
> THIS CASE AS IT'S THE STATE'S POSITION THAT THIS IS
> A DIRECT EVIDENCE CASE, AND PART OF THE NECESSARY
> ELEMENTS OF THIS CRIME, THAT BEING, WE MUST PROVE
> THAT THE KILLING WAS DONE IN THE COMMISSION OF ONE
> OF THE ENUMERATED FELONIES, IN THIS CASE BEING
> BURGLARY, SINCE THERE IS DIRECT PROOF AS TO THE --

218

ONE OF THE MAJOR AND NECESSARY ELEMENTS OF THE
CRIME OF CAPITAL MURDER THAT WOULD TAKE THIS OUT OF
THE CIRCUMSTANTIAL FIELD, AND MAKE IT A DIRECT
EVIDENCE CASE.

MR. SAMS:

YOUR HONOR, I DON'T --WE --IT WAS ABOUT SIX MONTHS
AGO THAT WE HAD THAT SPECIFIC QUESTION, NOT IN A
CAPITAL MURDER CASE, COME UP IN THIS COURT; WE ALL
DID CONSIDERABLE RESEARCH WORK, AND THERE IS A
SUPREME COURT DECISION, FAR BE IT FOR ME TO
REMEMBER THE NAME OF IT, WHERE IT HELD THAT THERE
IS NO SUCH THING AS A PURE HUNDRED PERCENT
CIRCUMSTANTIAL EVIDENCE CASE. THAT BEING SO AND
THE BULK OF THE TESTIMONY IN THIS CAUSE --IN THIS
CASE BEING CIRCUMSTANTIAL BY NATURE, WE FEEL WE
ARE ENTITLED TO INSTRUCTION D-2.

THE COURT:

THE OBJECTION WILL BE OVERRULED, INSTRUCTION D-2
WILL BE GIVEN.

ANY OBJECTION TO INSTRUCTION D-3?

THAT IS REPETITIOUS WITH AN INSTRUCTION THE COURT
WILL GIVE, AND WILL BE REFUSED AS REPETITIOUS.

ANY OBJECTION TO INSTRUCTION D-4?

MR. HOWARD:

YOUR HONOR, THIS IS SIMILAR OR EXACTLY THE SAME AS
ONE THAT THE COURT WILL GIVE WITH THE EXCEPTION OF
THE --OF THE LAST PHRASE WHICH IS THE --THIS IS
SO-CALLED THE HANGING JURY INSTRUCTION, AND I
WOULD OBJECT TO IT AS BEING REPETITIOUS IN ITS
MAJOR PARTS WITH THE COURT'S INSTRUCTIONS.

219

THE COURT:

THE COURT WILL INSTRUCT THEM ON THIS, AND THEREFORE IT WILL BE REFUSED AS REPETITIOUS. ANY OBJECTION TO INSTRUCTION D-5?

MR. HOWARD:

I WOULD OBJECT TO D-5 AS BEING REPETITIOUS WITH THE INSTRUCTIONS THAT THIS COURT IS GOING TO GIVE IN THIS CASE, YOUR HONOR.

MR. SAMS:

WE PARTICULARLY LIKE THE LANGUAGE OF OUR OWN INSTRUCTIONS, MAY IT PLEASE THE COURT.

THE COURT:

D-5 WILL BE GIVEN; THE COURT WILL WITHDRAW ITS INSTRUCTION ON THE PRESUMPTION OF INNOCENCE. D-6 IS ALREADY COVERED I BELIEVE IN THE STATE'S INSTRUCTIONS; DO YOU WANT TO WITHDRAW THAT, MR. SAMS?

MR. SAMS:

ALL RIGHT, I'LL WITHDRAW THAT, BUT I WOULD LIKE TO SUBMIT ANOTHER ONE, SIR.

THE COURT:

ALL RIGHT, INSTRUCTION D-7 --

MR. SAMS:

THAT ONE WOULD NOT BE APPROPRIATE AT THIS --

THE COURT:

THAT WILL NOT BE APPROPRIATE AT THIS TIME.

MR. HOWARD:

YOUR HONOR, I DIDN'T FILE THE STATE'S SECOND INSTRUCTIONS EITHER. I HAVEN'T EVEN FILED THEM YET BECAUSE I DIDN'T THINK THEY WOULD BE APPROPRIATE UNTIL THAT TIME.

220

MR. SAMS:

I HAVE D-8 AND D-9, YOUR HONOR; 7 IS KIND OF OUT OF ORDER IN THE LINE OF PROOF.

THE COURT:

ANY OBJECTION TO INSTRUCTION D-8?

MR. HOWARD:

I WOULD OBJECT TO THAT AS BEING REPETITIOUS WITH THE INSTRUCTIONS THAT THE COURT GIVES IN THESE CASES, YOUR HONOR.

THE COURT:

THE OBJECTION WILL BE SUSTAINED AS REPETITIOUS; D-8 WILL BE REFUSED.

ANY OBJECTION TO INSTRUCTION D-9?

MR. HOWARD:

I WOULD OBJECT TO D-9 FOR THE SAME REASONS I OBJECTED BEFORE, YOUR HONOR, THAT THE STATE DOES NOT TAKE THE POSITION THAT THIS IS A CIRCUMSTANTIAL EVIDENCE AS THERE IS DIRECT PROOF AS TO THE ESSENTIAL ELEMENTS OF THE CRIME OF CAPITAL MURDER THEREBY REMOVING THIS FROM A CIRCUMSTANTIAL REALM.

THE COURT:

WELL, YOU'VE LEFT OUT A WORD IN THE INSTRUCTION APPARENTLY.

MR. SAMS:

"THE COURT INSTRUCTS THE JURY THAT THE EVIDENCE IN THIS CASE WHERE CIRCUMSTANTIAL --WHERE CIRCUMSTANTIAL REQUIRES THE STATE --"

THE COURT:

I SEE.

ALL RIGHT, D-9 WILL BE GIVEN.

THE COURT WILL SUBMIT INSTRUCTION C-11; ANY

314

221

OBJECTION TO C-11?

MR. SAMS:

No OBJECTION TO C-11 BY THE DEFENDANT.

MR. HOWARD:

None, YOUR Honor.

THE COURT:

BEING NO OBJECTION, C-11 WILL BE GIVEN.

ALL RIGHT, DO YOU HAVE ANY OTHERS NOW; YOU SAY
YOU WANT TO --

MR. SAMS:

I'D HAVE TO DICTATE IT IF THE COURT WOULD JUST GIVE
ME A FEW MINUTES TO GET MY SECRETARY HERE.

THE COURT:

ALL RIGHT, LET'S GET IT.

MR. HOWARD:

Your Honor, WE HAVE THE STATE'S INSTRUCTIONS THAT
HAVE BEEN SUBMITTED DOES NOT ENCOMPASS ANY
CIRCUMSTANTIAL EVIDENCE; IT GOES DIRECT EVIDENCE,
AND NOW THE DEFENDANT HAS RECEIVED SOME
CIRCUMSTANTIAL INSTRUCTIONS, AND I THINK THAT IF
THIS IS IN FACT, THE COURT RULES THAT THIS IS A
CIRCUMSTANTIAL EVIDENCE CASE, I'M GOING TO HAVE TO
AMEND MY INSTRUCTIONS FOR THIS JURY TO BE PROPERLY
INSTRUCTED OR WE'LL HAVE TWO CONFLICTING THEORIES
GOING TO THIS JURY; IT'S GOING TO HURT THE JURY,
YOUR Honor.

THE COURT:

ALL RIGHT, WE'LL TAKE A RECESS; LET'S SEE THE
ATTORNEYS IN CHAMBERS.

(RECESS)

3/5

222

FOLLOWING A SHORT RECESS, ALL MEMBERS OF THE COURT, INCLUDING THE JUDGE, COURT REPORTER, ATTORNEYS, CLERK, BAILIFFS, AND THE DEFENDANT BEING PRESENT, THE FOLLOWING PROCEEDINGS WERE HAD:

THE COURT:

LET THE JURY COME IN.

(JURY IN)

THE COURT:

YOU MAY PROCEED.

MR. SAMS:

THE DEFENDANT RESTS.

THE COURT:

ALL RIGHT, BOTH SIDES HAVE RESTED, SO ALL THAT REMAINS WILL BE THE LAW THAT I WILL GIVE YOU AND ARGUMENT OF COUNSEL, AND THEN YOU CAN BEGIN YOUR DELIBERATIONS, SO WE'LL TRY TO GET STARTED AT A QUARTER OF ONE, AND REMEMBER DURING THIS NOON RECESS NOT TO TALK WITH ANYONE, PERMIT ANYONE TO TALK WITH YOU OR IN YOUR PRESENCE, DON'T DISCUSS IT AMONG YOURSELVES, AND DON'T LOOK AT ANY NEWSPAPER OR ANY OTHER TYPE OF REPORTS OF THE TRIAL. YOU MAY RETIRE TO YOUR JURY ROOM AND FRESHEN UP, AND THEN THE BAILIFFS WILL CARRY YOU TO LUNCH.

(JURY OUT)

THE COURT:

WE'LL TAKE A TEN MINUTE RECESS, AND THEN I WANT THE REST OF THOSE INSTRUCTIONS SUBMITTED.

(RECESS)

223

FOLLOWING THE NOON RECESS, ALL MEMBERS OF THE COURT, INCLUDING THE JUDGE, COURT REPORTER, ATTORNEYS, CLERK, BAILIFFS, AND THE DEFENDANT BEING PRESENT, THE FOLLOWING PROCEEDINGS WERE HAD:

THE COURT:

ALL RIGHT, LET'S BEGIN BACK NOW. S-1 HAS BEEN GIVEN; S-3 IS THE ELEMENTS OF BURGLARY, THAT'S BEEN GIVEN. NOW, S-2, DO YOU WANT TO SUBSTITUTE?

MR. HOWARD:

YOUR HONOR, I WOULD MAKE A MOTION TO WITHDRAW S-2 AND SUBSTITUTE THEREIN S-2A.

THE COURT:

ALL RIGHT, S-2 IS WITHDRAWN, AND S-2A --ANY OBJECTION TO S-2A?

MR. SAMS:

NO, SIR, NO OBJECTION.

THE COURT:

NO OBJECTION, S-2A WILL BE GIVEN.

ALL RIGHT, S-4 HAS BEEN GIVEN.

MR. HOWARD:

I WOULD MOVE TO WITHDRAW THE S-4 THAT WE'VE SUBMITTED, YOUR HONOR, AND SUBSTITUTE THEREIN S-4A.

THE COURT:

ALL RIGHT, S-4 WILL BE WITHDRAWN. S-4A, ANY OBJECTION TO THAT?

MR. SAMS:

NO, SIR.

THE COURT:

NO OBJECTION, S-4A WILL BE GIVEN.

ALL RIGHT, NOW, D-1 HAS BEEN GIVEN; THAT'S THE INDICTMENT. D-2 IS THE FAVORABLE AND UNFAVORABLE.

224

MR. HOWARD:

I'M GOING TO OBJECT --RENEW MY OBJECTION TO INSTRUCTION D-2, YOUR HONOR. THAT IS THE TWO THEORY INSTRUCTION, AND THERE --THIS INSTRUCTION IS NOT SUPPORTED BY THE EVIDENCE AS ELICITED IN THIS CAUSE AND IN THIS TRIAL, AND I WOULD FURTHER OBJECT THAT THE TWO THEORY INSTRUCTION MAY ONLY BE GIVEN WHEN THE CASE RESTS ENTIRELY ON CIRCUMSTANTIAL EVIDENCE. THIS CASE DOES NOT REST ENTIRELY ON CIRCUMSTANTIAL EVIDENCE, AND IN SUPPORT OF THAT POSITION I'D CITE TO THE COURT JOHNSON VERSUS STATE, 347 SO. 2D., SECOND SERIES, AT PAGE 358.

MR. MONTGOMERY:

YOUR HONOR, WE'VE GOT SOME OTHER AUTHORITY ON THAT IF YOU WISH TO SEE IT.

THE COURT:

D-2 WILL BE REFUSED. I THINK IT'LL BE COVERED IN SOME OF THESE OTHER INSTRUCTIONS NOW.

D-5 HAS BEEN GIVEN; THAT'S THE BURDEN OF PROOF.

D-9 HAS BEEN GIVEN, BUT I THINK I SAW ANOTHER ONE JUST LIKE IT.

MR. SAMS:

YES, SIR, THERE'S ANOTHER ONE COMING IN NOW.

THE COURT:

THAT WOULD BE COVERED BY YOUR NEW D-12 I BELIEVE.

MR. HOWARD:

AND D-10 AND D-11.

MR. SAMS:

YES, SIR, SO I'LL WITHDRAW 9.

THE COURT:

D-9 IS WITHDRAWN. ALL RIGHT, NOW, WE COME TO D-10;

225

ANY OBJECTION TO INSTRUCTION D-10?

MR. HOWARD:

I WOULD OBJECT TO THAT AS BEING AN ABSTRACT
STATEMENT OF THE LAW, YOUR HONOR, AND NOT
EMBODYING THE FACTS OF THIS --THE EVIDENCE OF THIS
CASE.

THE COURT:

IT'S REPETITIOUS; D-10 WILL BE REFUSED.

D-11 IS COVERED IN THE --

MR. SAMS:

WE'LL WITHDRAW 11 NOW.

THE COURT:

ALL RIGHT, D-11 IS WITHDRAWN.

D-12 --

MR. SAMS:

DO YOU HAVE D-11A, SIR?

THE COURT:

LET'S SEE, D-11A, LET'S CONSIDER THAT FIRST.

MR. HOWARD:

NO OBJECTION.

THE COURT:

NO OBJECTION, D-11A IS GIVEN.

D-12.

MR. HOWARD:

I WOULD OBJECT TO D-12 AS NOT COMPORTING TO THE
FACTS AND EVIDENCE IN THIS CASE, YOUR HONOR, AND
FURTHER WOULD CITE THE SAME CASE, WILLIAM LEE
JOHNSON VERSUS STATE OF MISSISSIPPI, 347 SO.2D.,
AT PAGE 358.

MR. SAMS:

WELL, NOW, THIS IS A DIRECT QUOTE FROM BARRETT, AND

226

I'M READING FROM PAGE --MY PAGES DIDN'T PICK UP, AND IT WAS --

THE COURT:

WHAT'S THE DATE OF THAT CASE?

MR. SAMS:

'71, CITING A WHOLE LONG LINE OF CASES, THOMPSON, HILL --

THE COURT:

WHAT'S THE DATE OF YOUR CASE, COUNSEL?

MR. HOWARD:

JULY THE 13TH, 1977.

MR. SAMS:

'71 ON MINE.

THE COURT:

I AM FAMILIAR WITH THAT CASE, MR. SAMS.

D-12 WILL BE REFUSED.

C-11 HAS BEEN GIVEN.

HOW MUCH TIME DO YOU WANT TO ARGUE, GENTLEMEN?

MR. MONTGOMERY:

YOUR HONOR, THE STATE WOULD LIKE FORTY MINUTES TO THE SIDE, AND WE WON'T USE IT IF WE DON'T FEEL WE NEED IT.

THE COURT:

IS THAT AGREEABLE?

MR. SAMS:

AS LONG AS IT'S EVENLY DIVIDED, SIR.

THE COURT:

ALL RIGHT.

MR. HOWARD:

BETWEEN US?

227

MR. SAMS:

> YES, SIR.

MR. HOWARD:

> ALWAYS IS.

THE COURT:

> IS FORTY MINUTES SATISFACTORY?

MR. SAMS:

> FINE, SIR.

THE COURT:

> ALL RIGHT, YOU'LL HAVE FORTY MINUTES TO THE SIDE.
> LET'S SEE COUNSEL AT THE BENCH A MINUTE.

> (BENCH CONFERENCE)

THE COURT:

> YOU MAY BRING THE JURY IN.
> (JURY IN)

THE COURT:

> MEMBERS OF THE JURY, YOU HAVE HEARD ALL OF THE
> TESTIMONY AND RECEIVED THE EVIDENCE INTRODUCED AND
> RECEIVED INTO EVIDENCE DURING THE COURSE OF THIS
> TRIAL. THE COURT WILL PRESENTLY INSTRUCT YOU AS TO
> THE RULES OF LAW THAT YOU WILL USE AND APPLY TO
> THIS EVIDENCE IN ARRIVING AT YOUR VERDICT. IT IS
> YOUR EXCLUSIVE PROVINCE TO DETERMINE THE FACTS IN
> THIS CASE AND TO CONSIDER AND WEIGH THE EVIDENCE
> FOR THAT PURPOSE. THE AUTHORITY THUS VESTED IN YOU
> IS NOT AN ARBITRARY POWER, BUT ONE THAT MUST BE
> EXERCISED WITH SOUND DISCRETION, SINCERE JUDGMENT,
> AND IN ACCORDANCE WITH THE RULES OF LAW GIVEN YOU
> OR TO BE GIVEN YOU BY THE COURT. BOTH THE STATE OF
> MISSISSIPPI AND THE DEFENDANT HAVE A RIGHT TO

228

EXPECT THAT YOU WILL CONSCIENTIOUSLY CONSIDER AND
WEIGH THE EVIDENCE AND APPLY THE LAW OF THE CASE,
AND THAT YOU WILL REACH A JUST VERDICT REGARDLESS
OF WHAT THE CONSEQUENCES OF SUCH VERDICT MAY BE.
IT IS YOUR DUTY TO DETERMINE THE FACTS AND TO
DETERMINE THEM FROM THE EVIDENCE PRODUCED IN OPEN
COURT. YOU ARE TO APPLY THE LAW TO THE FACTS, AND
IN THIS WAY DECIDE THE CASE. YOU SHOULD NOT BE
INFLUENCED BY BIAS, SYMPATHY, OR PREJUDICE. YOUR
VERDICT SHOULD BE BASED ON THE EVIDENCE AND NOT
UPON SPECULATION, GUESSWORK, OR CONJECTURE. YOU
ARE THE SOLE JUDGES OF THE FACTS IN THIS CASE.
YOUR EXCLUSIVE PROVINCE IS TO DETERMINE WHAT WEIGHT
AND WHAT CREDIBILITY WILL BE ASSIGNED THE TESTIMONY
AND SUPPORTING EVIDENCE OF EACH WITNESS WHO HAS
TESTIFIED BEFORE YOU. YOU ARE REQUIRED AND
EXPECTED TO USE YOUR GOOD COMMON SENSE AND YOUR
SOUND HONEST JUDGMENT IN CONSIDERING AND WEIGHING
THE TESTIMONY OF EACH WITNESS WHO HAS TESTIFIED
BEFORE YOU. ALTHOUGH YOU AS JURORS ARE THE SOLE
JUDGES OF THE FACTS, YOU ARE DUTY BOUND TO APPLY
THE LAW AS STATED IN THESE INSTRUCTIONS. YOU ARE
NOT TO SINGLE OUT ONE INSTRUCTION ALONE AS STATING
THE LAW, BUT YOU MUST CONSIDER THESE INSTRUCTIONS
THAT I GIVE YOU AS A WHOLE. ARGUMENTS, STATEMENTS
AND REMARKS OF COUNSEL ARE INTENDED TO HELP YOU
UNDERSTAND THE EVIDENCE AND TO APPLY THE LAW, BUT
ARE NOT EVIDENCE. ANY ARGUMENT, STATEMENT, OR
REMARK BY COUNSEL HAVING NO BASIS IN THE EVIDENCE
SHOULD BE DISREGARDED BY YOU. THE EVIDENCE WHICH
YOU ARE TO CONSIDER CONSISTS OF THE TESTIMONY OF

229

THE WITNESSES AND THE EXHIBITS OFFERED AND
RECEIVED DURING THE COURSE OF THE TRIAL. PRODUCTION
OF THIS EVIDENCE IN COURT IS GOVERNED BY RULES OF
LAW, THEREFORE FROM TIME TO TIME IT'S BEEN MY DUTY
AS JUDGE TO RULE ON THE ADMISSIBILITY OF EVIDENCE.
YOU MUST NOT CONCERN YOURSELF WITH THE COURT'S
RULINGS SINCE THEY ARE CONTROLLED AND GOVERNED BY
RULES OF LAW. YOU SHOULD NOT, HOWEVER, INFER FROM
ANY RULINGS BY THE COURT THAT THE COURT HAS ANY
OPINION ON THE MERITS OF THE CASE FAVORING ONE SIDE
OR THE OTHER. YOU SHOULD NOT SPECULATE AS TO
POSSIBLE ANSWERS TO QUESTIONS WHICH THE COURT DID
NOT REQUIRE TO BE ANSWERED; FURTHER, YOU SHOULD NOT
DRAW ANY INFERENCE FROM THE CONTENT OF THOSE
QUESTIONS. YOU ARE TO DISREGARD ALL EVIDENCE WHICH
WAS EXCLUDED BY THE COURT DURING THE COURSE OF THE
TRIAL.

I WILL READ THESE INSTRUCTIONS TO YOU, AND THEN YOU
WILL BE PERMITTED TO CARRY THEM INTO THE JURY ROOM
WITH YOU DURING YOUR DELIBERATIONS.

(COURT READS INSTRUCTIONS TO JURY)

THE COURT:

LET'S SEE COUNSEL AT THE BENCH JUST A MINUTE.

(BENCH CONFERENCE)

* * * * * * * * * *

## CLOSING ARGUMENT

MR. MONTGOMERY:

LADIES AND GENTLEMEN, THIS IS, AS HIS HONOR HAS
TOLD YOU, IS CALLED THE ARGUMENT, AND I SUBMIT TO YOU, LADIES
AND GENTLEMEN, THAT I DON'T WANT TO ARGUE WITH YOU; I JUST

230

WANT TO POINT OUT SOME THINGS IN THIS CASE, AND TO TELL YOU SOME THINGS THAT I THINK WILL HELP YOU TO MAKE UP YOUR MIND THAT MACK ARTHUR KING IS, IN FACT, GUILTY OF CAPITAL MURDER AS WE HAVE CHARGED; THAT HE IS --DID KILL MRS. LELA PATTERSON WHILE HE WAS IN THE COMMISSION OF THE CRIME OF BURGLARY; THAT HE BROKE IN HER HOUSE AND THAT HE INTENDED TO COMMIT A CRIME ONCE HE GOT IN, AND THAT CRIME WAS THAT HE INTENDED TO STEAL AND I THINK I'VE PROVED THAT HE DID INTEND TO STEAL ONCE THAT HE GOT IN BECAUSE OF ALL THE THINGS THAT WE BROUGHT UP HERE FOR YOU, BUT A COUPLE OF THINGS THAT I THINK THAT YOU SHOULD KNOW AND THINK ABOUT BEFORE WE BEGIN, AND I WANT TO DISCUSS IT WITH YOU. THE JUDGE HAS INSTRUCTED YOU THAT THE BURDEN OF PROOF IN A CRIMINAL CASE RESTS UPON THE STATE OF MISSISSIPPI, LADIES AND GENTLEMEN, AND AS DISTRICT ATTORNEY, LEE AND I HAVE GLADLY ACCEPTED THAT BURDEN AND WE HAVE MET OUR BURDEN OF PROVING THE DEFENDANT GUILTY BEYOND A REASONABLE DOUBT AND TO THE EXCLUSION OF EVERY REASONABLE HYPOTHESIS CONSISTENT WITH THE DEFENDANT'S INNOCENCE. I KNOW THAT SOUNDS LIKE A LOT OF LEGAL LANGUAGE, AND I'M GOING TO GIVE YOU MY INTERPRETATION OF WHAT THAT MEANS. I THINK THAT THIS WILL HELP YOU, AND I KNOW IT WILL HELP YOU BECAUSE IN MOST EVERY CRIMINAL CASE I POINT OUT TO THE JURY THAT S-2A WILL BE YOUR ROAD MAP. THIS WILL BE --THIS WILL TELL YOU WHAT I HAVE TO PROVE IN ORDER FOR YOU TO CONVICT THE DEFENDANT GUILTY OF CAPITAL MURDER, S-2A, AND IT SAYS, "THE COURT INSTRUCTS THE JURY THAT CAPITAL MURDER IS THE KILLING OF A HUMAN BEING WHEN DONE WITHOUT -- OR WITHOUT ANY DESIGN TO EFFECT THE DEATH -- WITH OR WITHOUT ANY DESIGN TO EFFECT THE DEATH." THAT MEANS THAT HE DIDN'T HAVE TO HAVE ANY MALICE OR FORETHOUGHT OR PREMEDITATION; THAT HE MAY NOT HAVE MEANT TO KILL HER, BUT IF SHE DIED THAT'S WHAT COUNTS BECAUSE SHE WAS DEAD, BUT WE ARE NOT INVOLVING

231

OURSELVES WITH THAT. I THINK THE EVIDENCE SHOWS THAT HE
CERTAINLY DID INTEND TO KILL HER BY HITTING HER OVER THE HEAD,
HITTING HER EYE, CHOKING HER, AND THEN DROWNING HER. I THINK
CERTAINLY THAT HE WAS INTENDING TO KILL HER, AND THAT HE DID
HAVE THE DESIGN TO KILL HER, AND THAT THE PERSON WAS ENGAGED
IN THE COMMISSION OF THE CRIME OF BURGLARY. BURGLARY IS
BREAKING IN SOMEBODY'S HOUSE --MRS. LELA PATTERSON'S HOUSE
WITH THE INTENT TO STEAL, WITH THE INTENT TO TAKE HER
ELECTRIC BLANKETS, WITH THE INTENT TO TAKE HER NECKLACES, TO
STEAL, AND IF YOU FIND THAT HE BROKE IN THAT HOUSE, AND THAT
HE KILLED HER, THAT'S CAPITAL MURDER, LADIES AND GENTLEMEN,
AND I'VE MET MY BURDEN. "---AND TO THE EXCLUSION OF EVERY
REASONABLE HYPOTHESIS CONSISTENT WITH INNOCENCE," LET'S TALK
ABOUT THIS A MINUTE. THIS IS A CIRCUMSTANTIAL EVIDENCE CASE,
AND I TOLD YOU YESTERDAY THAT CIRCUMSTANTIAL EVIDENCE, AND THE
COURT HAS TOLD YOU THAT CIRCUMSTANTIAL EVIDENCE IS JUST AS
STRONG AS DIRECT EVIDENCE. DIRECT EVIDENCE WOULD BE AN EYE-
BALL WITNESS, THAT SOMEBODY ACTUALLY SAW --WELL, NOBODY SAW
WHAT HAPPENED EXCEPT THE DEFENDANT AND LELA PATTERSON, SO THE
LAW SAYS THE STATE HAS TO PROVE HIM GUILTY THROUGH
CIRCUMSTANTIAL EVIDENCE. NOW, AN EXAMPLE OF CIRCUMSTANTIAL
EVIDENCE IS THAT MY WIFE ABOUT THREE MONTHS AGO MADE SOME
FUDGE, AND I HAD IT IN MY KITCHEN, AND I'VE GOT TWO KIDS,
LADIES AND GENTLEMEN; I'VE GOT A LITTLE BOY THAT'S ALMOST
THREE AND A LITTLE GIRL THAT'S SEVEN, AND MY WIFE TOLD MY
LITTLE BOY, SAYS, "DON'T YOU GO AND BOTHER THAT FUDGE THAT'S
ON THE COUNTER IN THE KITCHEN," AND SHE LEFT, AND WHEN SHE
CAME BACK MY LITTLE BOY WAS SITTING IN THE MIDDLE OF THE
FLOOR; HE HAD THE FUDGE PAN BETWEEN HIS LEGS; HE HAD FUDGE
ALL AROUND HIS MOUTH; THE FUDGE PAN WAS EMPTY; AND THERE WAS
A CHAIR PUSHED UP AGAINST THE COUNTER, AND FROM THOSE

232

CIRCUMSTANCES, THE CIRCUMSTANCES SURROUNDING THAT INCIDENT A REASONABLE PERSON COULD INFER THAT MY LITTLE BOY TOOK THAT FUDGE, AND THE SAME THING IS TRUE HERE TODAY, LADIES AND GENTLEMEN, FROM THE CIRCUMSTANCES SURROUNDING WHAT HAPPENED OVER AT LELA PATTERSON'S HOUSE AND WHAT'S BEEN BROUGHT TO YOU FROM THIS WITNESS STAND, YOU CAN INFER THAT THE DEFENDANT KILLED MRS. PATTERSON WHILE HE WAS BURGLARIZING HER HOUSE, BUT IT'S SO IRONIC --MY WIFE --MY LITTLE BOY CAN TALK, AND SHE SAYS, "DID YOU GET THAT FUDGE?" HE SAID, "NO, MAMA, I DIDN'T DO IT; MY SISTER DID IT," AND MY SISTER WASN'T EVEN AT HOME; HIS SISTER WASN'T EVEN AT THE HOUSE. "I DIDN'T DO IT; SOME-BODY ELSE DID IT," AND HE'S GOT THE CHOCOLATE ALL OVER HIS MOUTH. JUST LIKE THE DEFENDANT HAS ALL OF THIS STUFF, THE BLOOD ON HIS PANTS. NOW, JUST BECAUSE YOU WERE SELECTED, I WANT YOU TO USE YOUR GOOD COMMON SENSE, AND GOOD REASON, AND I WANT TO POINT OUT TO YOU THE CIRCUMSTANCES THAT DID THIS TO MRS. LELA PATTERSON. NOW, I HAVE TO EXCLUDE EVERY REASONABLE--NOW, THAT IS SO IMPORTANT; TALK ABOUT THAT --REASONABLE HYPOTHESIS OR STORY; APOTHESIS IS A STORY OR THEORY THAT IS CONSISTENT WITH HIS INNOCENCE. I HAVE TO DO AWAY WITH ALL OF THEM. JUST LIKE MY LITTLE BOY SAID THAT HIS SISTER DID IT; THAT'S NOT REASONABLE BECAUSE MY LITTLE GIRL WASN'T AT HOME, AND YOU CAN EXCLUDE THAT. NOW, HERE ARE THE CIRCUMSTANCES THAT I'VE WRITTEN DOWN THAT I THINK WILL HELP YOU, AND I KNOW WILL CONVINCE YOU THAT HE IS GUILTY OF CAPITAL MURDER THROUGH CIRCUMSTANTIAL EVIDENCE, AND YOU TOLD ME AND THE COURT THAT YOU WOULD DECIDE THIS CASE ON THE EVIDENCE THAT CAME FROM THAT WITNESS STAND AND THESE EXHIBITS, AND NOTHING ELSE --THE EVIDENCE THAT CAME FROM THE WITNESS STAND, AND LET ME TELL YOU WHAT CAME FROM THE WITNESS STAND, LADIES AND GENTLEMEN, CIRCUMSTANTIAL EVIDENCE CAME FROM THE WITNESS STAND. EVERY-

233

THING THAT WAS TAKEN IN THAT HOUSE WAS FOUND EITHER AT MACK ARTHUR KING'S HOUSE OR BEHIND MACK ARTHUR KING'S HOUSE, OR BARBARA JORDAN SAID THAT MACK ARTHUR KING GAVE EVERYTHING THAT WAS TAKEN. NOTHING WAS FOUND OVER AT ANYBODY ELSE'S HOUSE, CIRCUMSTANCE ONE. THE FINGERPRINTS OF MACK ARTHUR KING, LADIES AND GENTLEMEN, THE FINGERPRINTS THAT WERE FOUND ON THE FILE BOX AND ON THE FOLDERS, AND YOU'LL HAVE PHOTOGRAPHS BACK THERE TO SHOW YOU HOW THOSE FILE FOLDERS WAS LAYING ON THE FLOOR, AND HOW THROWN AROUND THEY WERE BECAUSE MACK ARTHUR KING WAS GOING THROUGH THEM LOOKING FOR SOME MONEY OR SOME- THING; CIRCUMSTANTIAL EVIDENCE THAT HE WAS IN THAT HOUSE AT THE TIME THAT THAT LADY WAS KILLED; THE BLOOD, WE PROVED TO YOU THAT --MACK ARTHUR KING IS SMART, LADIES AND GENTLEMEN. HE CUT THAT TELEPHONE WIRE, AND HE GOT THIS RAG HERE, AND AFTER HE KILLED MRS. PATTERSON HE WIPED IT ALL UP, BUT HE DIDN'T WIPE ENOUGH OFF OF HIS PANTS, AND THERE WAS BLOOD IN THE BATHROOM FLOOR, AND THERE WAS BLOOD IN THE TUB, AND THERE WAS HUMAN BLOOD ON MACK ARTHUR KING'S PANTS, CIRCUMSTANTIAL EVIDENCE --HUMAN BLOOD. HUMAN BLOOD ON A BOX; REMEMBER THIS, LADIES AND GENTLEMEN, THIS IS THE BLANKET THAT HE WRAPPED ALL THE STUFF IN AND TOOK IT OUT BEHIND THE PINE TREE WHERE HIS DOG WAS, AND THERE WAS A BOX THAT WAS IN THAT; THIS BOX CAME FROM OUT OF THERE AND IT HAD HUMAN BLOOD ON IT. I TELL YOU, YOU CAN REASONABLY INFER THAT THIS IS MRS. PATTERSON'S BLOOD FROM THE CIRCUMSTANCES. IT CAME FROM MRS. PATTERSON'S HOUSE, CIRCUMSTANTIAL EVIDENCE, LADIES AND GENTLEMEN, BUT THIS IS SO VERY IMPORTANT, AND I DON'T KNOW IF YOU CAUGHT IT, "MACK ARTHUR KING GAVE ME ALL OF THESE THINGS --MACK ARTHUR KING -- MACK ARTHUR KING," AND THIS KNIFE WAS TAKEN OUT OF MRS. PATTERSON'S PURSE, CIRCUMSTANTIAL EVIDENCE. THIS IS SOMETHING THAT I THINK IS REALLY IMPORTANT, AND I WANT YOU TO DISCUSS IT

234

AND I'M GOING TO PULL IT OUT SEPARATELY. REMEMBER THE
DAUGHTER, MRS. ANDERSON, REMEMBER HER? REMEMBER WHAT SHE
SAID ABOUT THIS NECKLACE, "YES, THIS WAS MY MOTHER'S NECKLACE."
MRS. LELA PATTERSON, AN 84 YEAR OLD WOMAN, AND SHE NEVER TOOK
THIS NECKLACE OFF EVEN TO TAKE A BATH. SHE SAID --HOW DO YOU
SUPPOSE THIS NECKLACE GOT FROM LELA PATTERSON'S NECK ON
BARBARA JORDAN'S NECK; WHO HAD TO TAKE IT OFF OF HER; WHO GAVE
IT TO BARBARA JORDAN, CIRCUMSTANTIAL EVIDENCE, LADIES AND
GENTLEMEN. THIS NECKLACE WAS TAKEN OFF OF LELA PATTERSON
AFTER SHE WAS KILLED, CIRCUMSTANTIAL EVIDENCE, AND YOU CAN
CONVICT ON CIRCUMSTANTIAL EVIDENCE, AND YOU TOLD ME YOU WOULD
AND THAT'S WHY YOU'RE SITTING HERE BECAUSE I BELIEVED YOU OUT
THERE THIS --YESTERDAY, AND I'M BELIEVING IN YOU NOW, AND I
SUBMIT TO YOU THAT BARBARA JORDAN SAID THAT HE WAS ACTING
STRANGE --HE WAS ACTING STRANGE, AND HE KEPT TELLING HER TO
SHUT UP AND QUIT ASKING HIM. WHAT WOULD THAT TEND TO SHOW
SOMEONE, LADIES AND GENTLEMEN. "I DON'T WANT TO TELL YOU
WHERE I GOT THIS STUFF; QUIT ASKING ME QUESTIONS." HE WAS
GUILTY; HE KNOWS HE'S GUILTY, AND I SUBMIT TO YOU THAT HE DID
KILL MRS. PATTERSON IN THIS TREMENDOUS HORRIBLE CRIME OF
CAPITAL MURDER, AND I SUBMIT TO YOU, LADIES AND GENTLEMEN,
THAT ANOTHER CIRCUMSTANCE WAS HE WASHED HIS CLOTHES; HE NEVER
WASHED HIS CLOTHES, BUT HE WASHED HIS CLOTHES TWO DAYS AFTER
THIS THING HAPPENED ON A SCRUB BOARD, BUT BECAUSE OF GOOD
POLICE WORK, BECAUSE OF YOUR LOWNDES COUNTY SHERIFF'S OFFICE,
THEY HAD ENOUGH FORESIGHT AND ENOUGH EXPERIENCE TO GET HIS
CLOTHES AND SEND IT TO THE CRIME LAB AND TO BRING ALL OF
THOSE EXPERT WITNESSES UP FROM JACKSON BECAUSE THE JUDGE TOLD
YOU I HAD TO DO THAT BECAUSE IT'S MY JOB, THE BURDEN OF PROOF,
AND I'VE MET IT, AND LADIES AND GENTLEMEN, IF YOU DO THIS --IF
YOU DO THAT, AND THEN YOU DO THAT, YOU'RE GOING TO GET BLOOD

235

ON YOUR PANTS; THAT'S REASONABLE; GOOD COMMON SENSE WILL TELL
YOU THAT. IF THERE WOULD HAVE BEEN AN EYE WITNESS THERE HE
WOULD HAVE BEEN UP HERE, BUT I DIDN'T HAVE IT; I GOT TO GO
WITH WHAT I'VE GOT; I GOT TO GO WITH THE TRUTH; I CAN'T MAKE
THINGS UP, AND I BROUGHT YOU ALL THE EVIDENCE, LADIES AND
GENTLEMEN. THE SHEET OFF THE BED THAT SHE WAS SLEEPING --IN
THE SAME BEDROOM; THE SHEET OUT OF THE SAME ROOM THAT SHE WAS
SLEEPING IN, HERE IT IS; WHERE DID YOU GET IT? MACK ARTHUR
KING'S HOUSE, CIRCUMSTANTIAL EVIDENCE. I SUBMIT TO YOU,
LADIES AND GENTLEMEN, FROM ALL OF THESE EXHIBITS THROUGH THE
CIRCUMSTANTIAL EVIDENCE THAT WE'VE BUILT A TREMENDOUS CASE
AGAINST THE DEFENDANT FOR CAPITAL MURDER. I TOLD YOU THAT IF
YOU FIND THAT HE WAS BREAKING INTO --HOW MUCH TIME DO I HAVE
LEFT? FIVE MINUTES --EXCUSE ME, LADIES AND GENTLEMEN.
LADIES AND GENTLEMEN, THE COURT HAS INSTRUCTED YOU THAT YOU
COULD FIND THE DEFENDANT GUILTY OF JUST THE BURGLARY, AND I
WOULD SAY THAT THAT WOULD BE A COP OUT; THAT I DON'T THINK
THAT THAT HAS --THE EVIDENCE DOESN'T SUPPORT THAT; I THINK
THE EVIDENCE SUPPORTS THAT THIS LADY IS DEAD, AND THE CHARGE
IS CAPITAL MURDER AND NOT BURGLARY, AND I SUBMIT TO YOU THAT
THE DEFENDANT IS GUILTY OF CAPITAL MURDER AND NOT BURGLARY
ALONE; THAT HE WENT AND CUT THOSE TELEPHONE LINES, AND THAT HE
WENT IN AND THAT HE WAS BURGLARIZING, AND LET ME SHOW THIS
TO YOU, THAT WHEN HE WAS DOING ALL OF THIS --YOU'LL SEE THESE
PICTURES, IT'S STATE'S EXHIBIT 2; IT'S THE HOUSE AND WHAT IS
SO HORRIBLE IS THE MAN HAD THE GALL TO GET THE ICE CREAM OUT
AND BE EATING THE LADY'S ICE CREAM AND HER FOOD AND TO KILL
HER, AND YOU'LL SEE FROM ALL THESE PICTURES THE MESS AND
DISARRAY THAT THAT HOUSE WAS IN AND THE NOISE THAT HE WAS
HAVING TO MAKE AND MRS. PATTERSON WOKE UP IN THAT BEDROOM,
AND SHE WALKED OUT TO SEE WHAT WAS GOING ON, AND THE DEFENDANT

236

HIT HER IN THE HEAD; WE'VE GOT A PICTURE OF MRS. --THE DEFENDANT HIT HER IN THE HEAD; SHE WAS STRUGGLING; SHE TRIED TO GET UP; THAT HE HIT HER WITH HIS RIGHT FIST IN THE LEFT EYE; YOU HEARD THE DOCTOR TESTIFY TO THAT; AND THAT HE GRABBED HER AND THAT HE WAS HOLDING HER BY HER ARMS, AND SHE WAS FIGHTING, AND THAT HE GRABBED HER AND HE STARTED STRANGLING HER, AND THAT SHE WENT UNCONSCIOUS, AND THAT HE DRUG HER INTO THE BATHROOM, AND HE WANTED TO MAKE IT LOOK LIKE SHE FELL IN THE TUB AND SO HE FILLED THE THING UP WITH WATER, AND LOOK AT MRS. PATTERSON GRASPING WITH THE STOPPER TO GET THE WATER OUT, AND THAT HE FILLED IT UP, AND THAT HE HELD HER HEAD UNDER THAT WATER AND THAT WATER GOT IN HER LUNGS, AND SHE DROWNED, AND THAT HE WIPED UP THE BLOOD, AND THAT HE LEFT, AND I SUBMIT TO YOU, LADIES AND GENTLEMEN, THAT THERE IS NO WILLIE PORTER, AND EVERY TIME MR. SAMS GETS UP AND STARTS ARGUING THE REASONABLE HYPOTHESIS IS WILLIE PORTER, I WANT YOU TO THINK ABOUT THESE THREE THINGS; ALL OF THE THINGS THAT WERE TAKEN FROM MRS. PATTERSON'S HOUSE WAS RECOVERED FROM MACK ARTHUR KING NOT ONE THING WAS RECOVERED FROM WILLIE PORTER; NO WILLIE PORTER FINGERPRINTS WERE FOUND; WE ASKED THE FBI MAN. YOU THINK OF THIS: NO WILLIE PORTER FINGERPRINTS WERE FOUND IN THAT HOUSE, AND IF WILLIE PORTER HAD BEEN DRUNK AND WENT IN THERE, HE WOULD HAVE HAD FINGERPRINTS IN THERE. AND YOU REMEMBER SHERIFF RAY GRINER; HE SAYS, "WE CHECKED WILLIE PORTER OUT AND THERE WAS NO EVIDENCE THAT HE HAD ANY INVOLVEMENT IN THIS CASE AT ALL," AND I SUBMIT TO YOU, LADIES AND GENTLEMEN, THAT IF WILLIE PORTER WAS INVOLVED IN THIS CASE HE WOULD BE SITTING UP HERE FACING A JURY JUST LIKE YOU, AND I SUBMIT TO YOU THAT THE SHERIFF'S OFFICE, THE PEOPLE FROM THE CRIME LAB, AND MY OFFICE, WE TRIED TO DO THE BEST JOB WE COULD, AND I SUBMIT TO YOU THAT MACK ARTHUR KING IS RESPONSIBLE FOR THIS.