# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**MACK ARTHUR KING**                                       *Petitioner*

*versus*                                       **No. 1:10-CV-00007-SA**

**STATE OF MISSISSIPPI**                                       *Respondents*

## ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2254 BY A PERSON IN STATE CUSTODY UNDER SENTENCE OF DEATH

---

**COME NOW** the respondents in the above styled and numbered cause and file this Answer to the Petition for Writ of Habeas Corpus filed in this matter. In response to the allegations contained in the numbered paragraphs of the petition, respondents would show unto the Court the following:

### INTRODUCTORY STATEMENT

This Court has jurisdiction over habeas corpus petitions under 28 U.S.C. §2254 as amended on April 24, 1996 by the Antiterrorism and Effective Death Penalty Act (AEDPA). The fact that this habeas petition is filed after that date requires that the provisions of the AEDPA be applied with full force to this petition. *Nobles v. Johnson*, 127 F.3d.. 409 (5th Cir.

1997); *Williams v. Cain*, 125 F.3d 269, 273-74 (5th Cir. 1997); *McBride v. Johnson*, 118 F.3d 432, 436 (5th Cir. 1997) ("Because this case comes within the parameters of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996), we apply the standard of review embodied in the AEDPA. *See Drinkard v. Johnson*, 97 F.3d 751 (5th Cir.1996), *cert. denied*, 502 U.S. 1107, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997)."). *See also Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The proper application of the AEDPA is fully explained in the decision of the United States Supreme Court in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

The answer of the respondent is as follows:

1.      Respondents admit the allegations contained in paragraph 1 of the petition.

2.      Respondents admit the allegations contained in paragraph 2 of the petition.

3.      Respondents admit the allegations contained in paragraph 3 of the petition.

4.      Respondents admit the allegations contained in paragraph 4 of the petition.

5.      Respondents admit the allegations contained in paragraph 5 of the petition.

6.      Respondents admit the allegations contained in paragraph 6 of the petition.

7.      Respondents admit the allegations contained in paragraph 7 of the petition.

8.      Respondents admit the allegations contained in paragraph 8 of the petition.

9.      Respondents admit the allegations contained in paragraph 9 of the petition.

10.     Respondents admit the allegations contained in paragraph 10 of the petition.

11.     Respondents admit the allegations contained in paragraph 11 of the petition.

12.     Respondents admit the allegations contained in paragraph 12 of the petition.

13.     Respondents deny the allegations contained in paragraph 13 of the petition.

14.     Respondents deny the allegations contained in paragraph 14, Ground B., of the petition.

15.     Respondents deny the allegations contained in paragraph 15, Ground C., of the petition.

16.     Respondents deny the allegations contained in paragraph 16, Ground D., of the petition.

17.     Respondents deny the allegations contained in paragraph 17, Ground E., of the petition.

18.     Respondents deny the allegations contained in paragraph 18, Ground F., of the petition.

19.     Respondents deny the allegations contained in paragraph 19, Ground G., of the petition.

20.     Respondents deny the allegations contained in paragraph 20., Ground H., of the petition.

21.     Respondents deny the allegations contained in paragraph 21., Ground I., of the petition.

22.     Respondents deny the allegations contained in paragraph 22., Ground J., of the petition.

23.     Respondents deny the allegations contained in paragraph 23., Ground K., of the petition.

24.     Respondents deny the allegations contained in paragraph 20., Ground L., of the

petition.[1]

## AFFIRMATIVE DEFENSES

**AND NOW** having responded to each of the allegations contained in the Petition for

Writ of Habeas Corpus, Respondents would affirmatively show unto the Court the following:

A.      The Court lacks jurisdiction over the parties and the subject matter.

B.      The petition and/or its individual grounds fail to state a claim upon

which relief may be granted.

C.      The constitutional grounds cited for relief in the petition are precluded

from federal consideration in that such rest upon independent and

adequate state law grounds.

D.      The grounds cited for relief in the petition are precluded from federal

consideration in that such rest upon a reasonable application of clearly

established federal law as determined by the Supreme Court of the

United States, and/or a reasonable determination of the facts in light of

the evidence presented in the state court proceedings.

E.      The grounds given for relief are without merit.

## SCOPE OF REVIEW

---

[1]The petitioner includes, following his final ground for relief, certain required
technical information.  See Pet. at 55.  Under this section, and to the extent the respondents
are required to admit or deny this information, the respondents hereby deny paragraph 15,
admit to paragraph 16, admit to paragraph 17, admit to paragraph 18, admit to paragraph 19,
and certainly deny paragraph 20.

This habeas corpus petition was filed on October 8, 2010. Respondents assert that the scope of review is controlled by the provisions of the amendments to 28 U.S.C. § 2254, *et seq*, contained in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), signed into law on April 24, 1996. The AEDPA amends the Federal habeas corpus statutes and thus the manner in which federal courts can review claims by persons under state court convictions and sentences. Since the present petition was filed after the effective date of the AEDPA its provisions apply to this case with full force. *See Nobles v. Johnson*, 127 F.3d 409 (5th Cir. 1997); *Williams v. Cain*, 125 F.3d 269, 273-74 (5th Cir. 1997); *McBride v. Johnson*, 118 F.3d 432, 436 (5th Cir. 1997) ("Because this case comes within the parameters of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996), we apply the standard of review embodied in the AEDPA. *See Drinkard v. Johnson*, 97 F.3d 751 (5th Cir.1996).

## AFFIRMATIVE MATTERS PURSUANT TO RULE 5

Pursuant to 28 U.S.C.A. Section 2254, Rule 5, Respondents would show unto the Court the following:

**A. Procedural History:**

The case at bar arises from King's sentence of death for the August 3, 1980, capital murder of Lela Patterson. During the August 1980 Term of the Circuit Court of Lowndes County, Mississippi, the Grand Jury indicted petitioner for the capital murder of Lela Patterson during the course of a burglary. King was tried on December 4-5, 1981, on the indictment before a properly empaneled and sworn jury in the Circuit Court of said county.

5

After hearing evidence and deliberating thereon the jury returned a verdict of guilty of capital murder. Following this verdict the jury was presented with evidence in aggravation and mitigation of sentence. Again, after deliberation the jury returned a sentence of death.[2]

King took his automatic appeal from the conviction and sentence to the Mississippi Supreme Court raising the following claims:

1.      The Lower Court Erred When The Juror Mary Castelbury Holly Was Separated From The Rest Of The Jury Panel And Subsequently Allowed To Return To The Jury Room Following Voir Dire By Both The State's Attorney And The Attorney For The Defendant.

2.      The Lower Court Erred In Overruling The Defendant's Motion To Excuse The Juror Mary Castelbury Holly After Voir Dire Examination Revealed That She Had Failed To Disclose Certain Facts To The Defendant On Voir Dire Examination. The Failure Of The Juror To Disclose This Certain Information And The Trail Court Overruling The Motion To Excuse The Juror From The Panel Denied The Defendant Due Process Of Law As He Was Not To Exercise His Peremptory Challenges By the Process And Manner Dictated By Law.

3.      The Lower Court Erred When It Refused To Allow The Defendant To Amend Instruction D-7 To Instruct The Jury That If They Were Unable

---

[2]   We, the jury, unanimously find that the aggravating circumstances:

1)   The capital murder was committed while the defendant was engaged in the commission of the crime of burglary or in an attempt to commit a burglary,

2)   The defendant committed the capital murder in an especially heinous, atrocious and cruel manner.

Are sufficient to impose the death penalty and there are insufficient mitigating circumstances to outweigh the aggravating circumstances.

Tr. 389-390.

To Agree Which Circumstances Outweigh The Other Then Their Verdict Could Be "We, The Jury, Are Unable To Unanimously Agree Upon Punishment", During The Sentencing Phase Of The Trial Below.

4.    The Lower Court Erred When It Refused To Grant The Defendant's Instruction D-12.

King's Brief on Direct Appeal.

On October 27, 1982, the Mississippi Supreme Court rendered its decision accompanied by a written opinion affirming both the conviction and sentence. A timely petition for rehearing was filed and later denied by the Court on December 1, 1982. *See King v. State*, 421 So.2d 1009 (Miss. 1982) (*King I*).

King then sought relief in the United States Supreme Court by way of a petition for writ of certiorari. All questions raised related to his now vacated original death sentence.[3]

---

[3]    He raised the following questions:

1.    Whether, in reviewing the jury instructions on sentencing and in affirming the Petitioner's death sentence, the Supreme Court of Mississippi utilized such a broad and vague construction of Mississippi Code Annotated Section 99-19-101(5)(h) (specifying an "especially heinous, atrocious or cruel" murder as an aggravating circumstance) as to violate the Eight and Fourteenth Amendments to the United States Constitution.

2.    Whether the Petitioner was sentenced to death in violation of the Eighth and Fourteenth Amendments to the United States Constitution, when the sentencing jury was not instructed that, regardless of the relative weight of the aggravating circumstances and the mitigating circumstances, if the jurors wish to sentence the defendant to life imprisonment they have a right to do so.

3.    Whether the Petitioner was sentenced to death in violation of the Eighth and Fourteenth Amendments to the United States Constitution, when the trial court refused to instruct the sentencing jury that if the jurors

7

On May 2, 1983, this petition for writ of certiorari was denied. *King v. Mississippi*, 461 U.S. 919, 77 L.Ed.2d 290 (1983).

King then filed an Application for Leave to File a Petition for Writ of Error Coram Nobis in the Circuit Court of Lowndes County, Mississippi with the Mississippi Supreme Court. On December 14, 1983, that court denied the application holding that many claims were *res judicata*, while others were procedurally barred and were denied without prejudice. *King v. Thigpen*, 441 So.2d 1365 (Miss. 1983) (*King II*).

King then filed a Second Application for Leave to File a Petition for Writ of Error Coram Nobis in the Circuit Court of Lowndes County, Mississippi with the Mississippi Supreme Court and on March 7, 1984, that court ordered the Circuit Court of Lowndes County to conduct a hearing on the question of whether petitioner "was in fact denied effective assistance of counsel during the sentencing phase of his trial for capital murder." *King v. Thigpen*, 446 So.2d 601 (Miss. 1984) (*King III*).

Pursuant to a Mississippi Supreme Court order following this decision, an evidentiary hearing was held on the issue of effectiveness of counsel on August 14-15, 1984. Following this hearing, on May 27, 1985, the circuit court issued an unpublished opinion and order denying relief and finding that counsel had rendered effective assistance. King then appealed

---

were unable to unanimously agree on whether mitigating circumstances outweigh aggravating circumstances or **vice versa**, then their verdict should be that they are unable to unanimously agree upon the punishment to be inflicted.

Petition for Writ of Certiorari from Direct Appeal.

8

that decision raising claims relating to his now vacated sentence of death.

On February 18, 1987, the Mississippi Supreme Court affirmed the trial court's denial of relief and further denied all relief to the Petitioner. *King v. State*, 503 So.2d 271 (Miss. 1987) (*King IV*).

King then filed a petition for writ of habeas corpus with this Court and on July 2, 1991, the Court denied relief with a written opinion. *See King v. Pressley*, No. EC87-126-S-D. From this decision denying relief, the Petitioner took his appeal to the United States Circuit Court for the Fifth Circuit. On August 25, 1993, the United States Court of Appeals for the Fifth Circuit vacated the sentence of death and remanded the case with instructions to return to the State court for reconsideration of the sentence of death under *Clemons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990). *King v. Puckett*, 1 F.3d 280 (5th Cir. 1993).

The State then requested that the Mississippi Supreme Court reconsider the death penalty and perform a harmless error analysis on the sentence and then reaffirm the sentence. That court declined, vacated the sentence of death, and remanded the case for a new trial on the issue of sentence alone. *King v. State*, 656 So.2d 1168 (Miss. 1995).

Following this remand, the Petitioner was resentenced to death on April 9, 1998. The jury returned the following verdict:

> We, the Jury, find that the Defendant actually killed Lela Patterson and that the Defendant attempted to kill Lela Patterson. We, the Jury, unanimously find beyond a reasonable doubt the following aggravating circumstances exist: the Capital Murder was committed while the Defendant, Mack Arthur King, was engaged in the commission of the crime of burglary of an occupied

9

dwelling; and the Capital Murder was especially heinous, atrocious or cruel.

We, the Jury, further unanimously find that after weighing the mitigating circumstances and aggravating circumstances, that the mitigating circumstances do not outweigh the aggravating circumstances and that the Defendant should suffer the penalty of death.

/s/ Ernest Williams
Foreman of the Jury

CP. at 362-63.

The Petitioner then filed a motion for new trial which was denied on July 1, 1998.

King then appealed that judgment to the Mississippi Supreme Court on June 4, 1999, raising

the following issues:

A.      The Trial Court Made Several Errors That Resulted in an All White, All
        Pro-Death Penalty Jury.

B.      Before Trial, The Trial Court Denied Mr. King The Time And Money
        Necessary To Prepare A Defense.

C.      The Trial Court Erred At Trial By Allowing The State To Present
        Inadmissible And Inflammatory "Rebuttal" Allegations Of Prison
        Misconduct And By Allowing The Jury To Consider The HAC
        Aggravator.

D.      In Instructing The Jury, The Trial Court Committed Far Graver Errors
        Than Were Committed At The First Sentencing Hearing.

        King's Brief At ii.

The State responded in due course and on April 19, 2001, the Mississippi Supreme

Court, in a written opinion, again reversed and remanded the case to the Circuit Court of

Lowndes County for resentencing on the ground that a jury instruction which stipulated that

jurors were not to consider sympathy in their deliberations constituted reversible error. *See*

10

*King v. State*, 784 So.2d 884 (Miss., 2001).  Upon remand, the Mississippi Supreme Court

*sua sponte*, ordered the recusal of Judge Harvey Buck in a written  order on June 22, 2002.

C.P 80.  Also, on July 17, 2002, that court ordered the recusal of Judges Lee J. Howard and

John M. Montgomery.  C.P 82.  Judge R. Kenneth Coleman was then appointed Special

Judge by in a written Order dated August 22, 2002.  C.P.85.

The resentencing trial began on March 23, 2003, and concluded on March 28, 2003,

with the jury returning a sentence of death in the proper form:

> We, the Jury unanimously find beyond a reasonable doubt that the defendant actually killed.

> We the Jury unanimously find beyond a reasonable doubt the following aggravating circumstances:

> a.   The capital murder was committed while the defendant was engaged in the commission of the crime of burglary;

> b.   The capital murder was especially heinous, atrocious or cruel.

> c.   The capital murder was committed for the purpose of avoiding arrest.

> We, the Jury, further unanimously find that after weighing the mitigating circumstances and aggravating circumstances, that the mitigating circumstances do not outweigh the aggravating circumstances and that the defendant should suffer the penalty of death.

> /s/ Joe M. Shaw
> Foreman of the Jury

C.P. 449.

Following this, his third sentence of death, King filed a direct appeal brief on December  5,

2005, raising the following eleven assignments of error:

I.      THE TRIAL COURT IMPROPERLY DENIED KING'S MOTION
        FOR FUNDS TO OBTAIN EXPERT ASSISTANCE.

II.     THE TRIAL COURT ERRED BY FAILING TO FOLLOW
        CONSTITUTIONALLY REQUIRED PROCEDURES TO
        DETERMINE WHETHER KING WAS MENTALLY RETARDED.

III.    THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN
        DENYING KING'S MOTION TO CHANGE VENUE.

IV.     THE TRIAL COURT ERRED IN DENYING MR. KING'S MOTION
        TO EXCLUDE THE DEATH PENALTY AS A SENTENCING
        OPTION BECAUSE KING'S INDICTMENT WAS DEFICIENT.

V.      THE TRIAL COURT ERRED IN DENYING KING'S MOTION TO
        EXCLUDE THE DEATH PENALTY BECAUSE OF (A) 22-YEAR
        INCARCERATION ON DEATH ROW AND (B) UNAVOIDABLE
        JURY BIAS.

VI.     THE TRIAL COURT ERRED BY STRIKING JURORS BASED
        UPON THEIR VIEWS OF THE DEATH PENALTY.

VII.    THE TRIAL COURT ERRED IN DENYING KING THE
        OPPORTUNITY TO PRESENT EVIDENCE AND CHALLENGE
        THE STATE'S EVIDENCE REGARDING THE IDENTITY OF
        LELA PATTERSON'S ACTUAL KILLER.

VIII.   THE TRIAL COURT ERRED IN ALLOWING IMPERMISSIBLE
        VICTIM IMPACT TESTIMONY HIGHLY PREJUDICIAL TO KING
        AT THE RE-SENTENCING HEARING.

IX.     THE TRIAL COURT ERRED IN INSTRUCTING THE JURY ON
        THE AGGRAVATOR "ESPECIALLY HEINOUS, ATROCIOUS OR
        CRUEL," AND THERE WAS INSUFFICIENT EVIDENCE OF THE
        AGGRAVATOR, IN VIOLATION OF THE UNITED STATES AND
        MISSISSIPPI CONSTITUTIONS AND THIS COURT'S SPECIFIC
        MANDATE.

X.      THE TRIAL COURT'S JURY INSTRUCTIONS WERE IN ERROR.

XI.     THE AGGREGATE OF THE ERRORS IN THIS CASE REQUIRES

REVERSAL OF THE DEATH SENTENCE.

The State filed a timely response and the Mississippi Supreme Court affirmed King's

conviction and sentence of death in a written opinion on May 31, 2007. *See King v. State*,

960 So.2d 413 (Miss. 2007), (rehearing denied, August 2, 2007)(cert. denied, February, 19,

2008, *See King v. Mississippi*, 552 U.S. 1190, 128 S.Ct. 1223, 170 L.Ed.2d 77 (2008).

The Petitioner then filed a Motion for Leave to Proceed in the Trial Court with a

Petition for Post-Conviction Relief and Motion to Supplement and Amend Petition on May

16, 2008, raising the following seven assignments of error:

    I.    MISSISSIPPI'S LETHAL INJECTION PROCEDURE CREATES A SUBSTANTIAL RISK OF SERIOUS HARM IN VIOLATION OF THE EIGHTH AMENDMENT.

    II.    MACK ARTHUR KING WAS DENIED DUE PROCESS OF LAW WHEN THE TRIAL COURT DENIED HIM FUNDS FOR A MENTAL HEALTH EXPERT WITNESS, AND THIS COURT AFFIRMED THE DENIAL, THEREBY DENYING HIM THE OPPORTUNITY TO DEVELOP FULLY THE SUBSTANCE OF HIS CLAIM.

    III.    TRIAL COURT ERRED IN FAILING TO ALLOW PRESENTATION OF MITIGATION EVIDENCE.

    IV.    THE PETITIONER WAS DENIED HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WITH THE MEANING OF STRICKLAND v. WASHINGTON AND CORRESPONDING PORTIONS OF THE MISSISSIPPI CONSTITUTION.

    V.    MACK ARTHUR KING IS MENTALLY RETARDED AS DEFINED BY THE COURT IN CHASE v. STATE, AND THUS HE IS ELIGIBLE FOR THE DEATH PENALTY.

    VI.    PETITIONER WAS DENIED HIS RIGHTS GUARANTEED BY

13

THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE FEDERAL CONSTITUTION AND MISSISSIPPI LAW DUE TO THE CUMULATIVE EFFECT OF THE ERRORS AT HIS CAPITAL TRIAL.

VII.    THE SENTENCE RENDERED AGAINST THE PETITIONER IS DISPROPORTIONATE AND IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND CORRESPONDING PORTIONS OF THE MISSISSIPPI CONSTITUTION.

The State filed a timely response and this Mississippi Supreme affirmed King's conviction and sentence of death in a written opinion on May 31, 2007. *See King v. State*, 960 So.2d 413 (Miss. 2007), (rehearing denied, August 2, 2007)(cert. denied, February, 19, 2008, *See King v. Mississippi*, 552 U.S. 1190, 128 S.Ct. 1223, 170 L.Ed.2d 77 (2008). The petitioner then filed his filed his Motion for Leave to Proceed in the Trial Court with a Petition for Post-Conviction Relief and Motion to Supplement and Amend Petition on May 16, 2008, raising the following seven assignments of error:

I.      MISSISSIPPI'S LETHAL INJECTION PROCEDURE CREATES A SUBSTANTIAL RISK OF SERIOUS HARM IN VIOLATION OF THE EIGHTH AMENDMENT.

II.     MACK ARTHUR KING WAS DENIED DUE PROCESS OF LAW WHEN THE TRIAL COURT DENIED HIM FUNDS FOR A MENTAL HEALTH EXPERT WITNESS, AND THIS COURT AFFIRMED THE DENIAL, THEREBY DENYING HIM THE OPPORTUNITY TO DEVELOP FULLY THE SUBSTANCE OF HIS CLAIM.

III.    TRIAL COURT ERRED IN FAILING TO ALLOW PRESENTATION OF MITIGATION EVIDENCE.

IV.     THE PETITIONER WAS DENIED HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WITH

THE MEANING OF STRICKLAND v. WASHINGTON AND CORRESPONDING PORTIONS OF THE MISSISSIPPI CONSTITUTION.

V.    MACK ARTHUR KING IS MENTALLY RETARDED AS DEFINED BY THE COURT IN CHASE v. STATE, AND THUS HE IS ELIGIBLE FOR THE DEATH PENALTY.

VI.    PETITIONER WAS DENIED HIS RIGHTS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE FEDERAL CONSTITUTION AND MISSISSIPPI LAW DUE TO THE CUMULATIVE EFFECT OF THE ERRORS AT HIS CAPITAL TRIAL.

VII.    THE SENTENCE RENDERED AGAINST THE PETITIONER IS DISPROPORTIONATE AND IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND CORRESPONDING PORTIONS OF THE MISSISSIPPI CONSTITUTION.

The Mississippi Supreme Court rendered its post-conviction opinion affirming King's conviction and sentence of death in *King v. State*, 23 So.3d 1067 (Miss. 2009), on September 24, 2009.  The petition for rehearing was denied on January 7, 2010.

The petitioner has now filed the present petition for writ of habeas corpus with this Court seeking relief from his conviction and sentence of death.

**B.    FACTUAL HISTORY.**

At about 10:30 a.m on August 3, 1980, eighty-four old, Lela Patterson was found dead in a bathtub in her home.  An investigation  revealed that the screen on a door had been cut, the telephone wires outside the house had been severed, articles were scattered throughout the house, and dresser drawers had been emptied on the floor.  A fingerprint and palm print were found on two file folders in a box located in the house.  The prints matched known

15

fingerprints and palm prints of King. King's residence was searched two days later and several items which belonged to Mrs. Patterson were found. Petitioner was arrested on August 6, 1980, and denied that he had been in Mrs. Patterson's house on August 3. The officers interviewed King's girlfriend, Barbara Jordan, and on the basis of information received from her, King's residence was searched a second time and additional items from Mrs. Patterson's home were found.

King was questioned again after the second search and admitted that he entered Mrs. Patterson's residence on Saturday night, August 2, 1980, burglarized the house, saw Mrs. Patterson, but did not kill her. In this second statement he claimed he was accompanied by Willie Porter who remained outside while King burglarized the house, that Mrs. Patterson was alive when he left the house, and that Willie Porter entered the house has he was leaving. King also claimed he saw Willie Porter later in the morning of August 3, and Willie told him that he had also taken articles from Mrs. Patterson's house.

After signing the second statement, King agreed to another search of his residence and told the officers where to find additional items stolen from Mrs. Patterson's house that he had hidden near his house.

According to Barbara Jordan, King showed her some of the articles he had stolen, but did not tell her from where they came. She told officers that King was wearing green pants on Saturday, August 2 and Sunday, August 3, which were confiscated by the police. She stated that King washed the pants on Tuesday after refusing to let her was them as she usually did. Human blood was found on the pants but not in a sufficient amount to ascertain

16

the blood type.

The pathologist who performed the autopsy on Mrs. Patterson's body stated that she had multiple bruises about her neck, face and arms, a laceration on the back of her head, and water in her lungs. In the opinion of the pathologist Mrs. Patterson had been manually strangled, struck on the back of the head with such force that it caused edema of the brain, and had been under water while she was either conscious or unconscious. He was unable to ascertain the order in which the events occurred, but stated if the manual strangulation took place first, then the victim could have regained consciousness, but if the trauma to the skull occurred first, she possibly never regained consciousness. Mrs. Patterson's death could be attributed to either strangulation, a blow to the head or drowning.

The facts of this crime were also fully set forth in the Mississippi Supreme Court's opinion on direct appeal. *See King v. State*, 960 So.2d 413 (Miss. 2007).

**C. Scope Of Review.**

On October 8, 2010, the Petitioner filed his petition for writ of habeas corpus with this Court. The Petitioner presents several grounds for relief, including claims of ineffective assistance of counsel. Most of these claims were fully addressed by the Mississippi Supreme Court on direct appeal or on post-conviction review.[4] Because this petition was filed after the enactment of the AEDPA, the provisions of 28 U.S.C. § 2254 apply with full force to this habeas petition. Looking to 28 U.S.C. § 2254(d), we find:

---

[4]Respondents assert that there is an unexhausted claim in this petition which will be noted *infra*.

(d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

Thus, claims involving mixed questions of law and fact are governed by the dictates of § 2254(d), which holds that a federal court cannot grant habeas corpus relief unless it determines that the state court's decision involved an unreasonable application of the law to the facts. *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Moore v. Johnson*, 101 F.3d 1069, 1075-76 (5th Cir. 1996) (*citing Drinkard v. Johnson*, 97 F.3d 751, 767-68 (5th Cir. 1996)).[5]

This "unreasonable application" standard of review of state court decisions does not mean that a federal court may grant habeas relief based on a simple disagreement with the state court decision; such a standard would amount to nothing more than a *de novo* review. *Drinkard*, 97 F.3d at 768. Instead, a federal habeas court can grant habeas relief only if the state court decision was unreasonable. In *Williams v. Taylor, supra*, the Supreme Court held:

> Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its

---

[5]While *Moore* and *Drinkard* incorrectly applied the AEDPA retroactively to habeas corpus petitions pending prior its enactment, the manner in which the AEDPA will be applied in a proper case is controlling on this case. *McBride v. Johnson*, 118 F.3d 432, 436 (5th Cir. 1997).

independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

529 U.S. at 411.

The Court further stated in *Williams*,

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied – the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412-413.

"In effect, a reasonable, good faith application of Supreme Court precedent will immunize the state court conviction from federal habeas reversal." *Mata v. Johnson*, 99 F.3d 1261, 1268 (5th Cir. 1996), *vacated in part on other grounds*, 105 F.3d 209 (5th Cir. 1997).

King has failed to demonstrate how, and respondents assert he cannot show, the resolution of the claims raised on direct appeal or state post-conviction review "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the

19

time of the direct appeal and post-conviction review litigation. Furthermore, the claims of ineffective assistance of counsel, being questions of mixed law and facts, do not present decisions that were based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding. King thus, has failed to state a claim on which relief can be granted.

The long standing requirement of deference to factual findings made by state courts remains intact in the amendments to § 2254. Section 2254(e) reads:

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

However, the AEDPA changed the standard of proof that a petitioner must adduce to rebut the presumption of correctness of state court findings of fact. The standard is no longer a preponderance of the evidence standard, but the higher standard of clear and convincing evidence. King cannot meet this burden to overcome the findings of fact made by the State courts by clear and convincing evidence. *See Patterson v. Dretke*, 370 F.3d 480, 484 (5th Cir. 2004); *Morrow v. Dretke*, 367 F.3d 309, 315 (5th Cir. 2004).

In cases governed by the AEDPA, 28 U.S.C. § 2254, the analysis differs depending upon whether the issue is one of law, fact, or both. *See Drinkard v. Johnson*, 97 F.3d 751, 767-68 (5th Cir.1996). For questions of fact, habeas relief may be granted only if the Court finds that the state court made a determination of fact which was unreasonable in light of the evidence presented to it. *See* 28 U.S.C. § 2254(d)(2); *Drinkard*, 97 F.3d at 767-68. When

20

reviewing such factual determinations, the Court must presume correct the factual findings of the state court, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." *See* 28 U.S.C. § 2254(e)(1); *Jackson v. Anderson*, 112 F.3d 823, 824-25 (5th Cir.1997). When considering questions of law, on the other hand, this Court may grant habeas relief only if the state court's determination of law is contrary to "clearly established" United States Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1); *Drinkard*, 97 F.3d at 768. The Fifth Circuit, in *Jones v. Dretke*, 375 F.3d 352 (5th 2004), explained this requirement, stating:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; . . . . 28 U.S.C. § 2254(d) (emphasis added). The Supreme Court, interpreting § 2254(d)(1), held that "a state-court decision is . . . contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In order to find that a state adjudication is objectively unreasonable, "the state court's application [of federal law] must be more than merely incorrect." *Robertson v. Cockrell*, 325 F.3d 243, 248 (5th Cir.2003) (*en banc*)

> 375 F.3d at 353 -354.

Thus, the state court resolution of a claim must "not only be erroneous, but objectively unreasonable" in order for habeas relief to be granted. *Yarborough v. Alvarado*, 541 U.S. 652, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004); *Middleton v. McNeil*, 541 U.S. 433, 124 S.Ct. 1830, 158 L.Ed.2d 701(2004); *Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 157 L.Ed.2d

21

263 (2003); *Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S.Ct. 1, 4, 157 L.Ed.2d 1 (2003);

*Lockyer v. Andrade*, 538 U.S. 63, 76, 123 S.Ct. 1166, 1175 (2003); *Williams v. Taylor*, 529

U.S. 362, 409, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In *Holland v. Jackson*, 542 U.S.

934, 542 U.S. 649, 124 S.Ct. 2736 (2004), the United States Supreme Court gave the federal

habeas courts the following admonition:

> As we explained in *Visciotti*, § 2254(d) requires that "state-court decisions be
> given the benefit of the doubt." *Id*., at 24, 123 S.Ct. 357. "[R]eadiness to
> attribute error is inconsistent with the presumption that state courts know and
> follow the law." *Ibid*. The Sixth Circuit ignored those prescriptions.

124 S.Ct. at 2739.

*See Woodford v. Visciotti*, 537 U.S. 19, 123 S.Ct. 357 (2002).

In considering mixed questions, those containing issues of law and fact, the Fifth

Circuit held in *Patterson v. Dretke*, 370 F.3d 480 (5th Cir. 2004):

> "Section 2254(d)(1) provides the standard of review for questions of law and
> mixed questions of law and fact." *Caldwell v. Johnson*, 226 F.3d 367, 372
> (5th Cir.2000). A state court's decision is "contrary to . . . clearly established
> Federal law, as determined by the Supreme Court of the United States . . . if
> the state court arrives at a conclusion opposite to that reached by th[e] Court
> on a question of law or if the state court decides a case differently than th[e]
> Court has on a set of materially indistinguishable facts." *Williams v. Taylor*,
> 529 U.S. 362, 412- 13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A decision
> "involve[s] an unreasonable application of [ ] clearly established Federal law,
> as determined by the Supreme Court of the United States . . . if the state court
> identifies the correct governing legal principle from th[e] Court's decisions but
> unreasonably applies that principle to the facts of the prisoner's case." *Id*. at
> 413, 120 S.Ct. 1495.

370 F.3d at 483-84.

*See Williams v. Taylor*, 529 U.S. 362, 412- 13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000);

*Haley v. Cockrell*, 306 F.3d 257, 263 (5th Cir. 2002); *Carter v. Johnson*, 110 F.3d 1098, 1106-08 (5th Cir.) ("With a mixed question of law and fact, the facts are presumed correct and then the law is reviewed for reasonableness, not de novo."). These are the standards that must be applied by this Court in determining the claims made in this case.

Habeas relief generally may not be premised on rules of constitutional law that have yet to be announced or that were announced after the challenged conviction became final. *See Teague v. Lane*, 489 U.S. 288, 305-07, 109 S.Ct. 1060, 1073, 103 L.Ed.2d 334 (1989). *See also Schriro v. Summerlin*, 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004); *Beard v. Banks*, 542 U.S. 406, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004). In explaining what rules are to be retroactively applied, the United States Supreme Court, in *Tyler v. Cain*, 533 U.S. 656, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001), held:

> The Supreme Court does not "ma[k]e" a rule retroactive when it merely establishes principles of retroactivity and leaves the application of those principles to lower courts. In such an event, any legal conclusion that is derived from the principles is developed by the lower court (or perhaps by a combination of courts), not by the Supreme Court.[4] *We thus conclude that a new rule is not "made retroactive to cases on collateral review" unless the Supreme Court holds it to be retroactive.*[5]

_____

4. Similarly, the Supreme Court does not make a rule retroactive through dictum, which is not binding. *Cf. Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (contrasting dictum with holdings, which include the final disposition of a case as well as the preceding determinations "*necessary* to that result" (emphasis added)).

5. Tyler argues that defining "made" to mean "held" would create an anomaly: When it is obvious that a rule should be retroactive, the courts of appeals will not be in conflict, and this Court will never decide to hear the case and will never make the rule retroactive. Thus, Tyler concludes, we should construe §

2244(b)(2)(A) to allow for retroactive application whenever the "principles" of our decisions, as interpreted by the courts of appeals, indicate that retroactivity is appropriate. This argument is flawed, however. First, even if we disagreed with the legislative decision to establish stringent procedural requirements for retroactive application of new rules, we do not have license to question the decision on policy grounds. *See Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). Second, the "anomalous" result that Tyler predicts is speculative at best, because AEDPA does not limit our discretion to grant certiorari to cases in which the courts of appeals have reached divergent results.

533 U.S. at 663, 121 S.Ct. at 2482. [Emphasis added.]

No new rule can be retroactively applied unless the United States Supreme Court has specifically held it to have retroactive application.

Even if the Court finds error in some aspect of the case, before the Court can grant habeas relief, the Court must also conduct a harmless error analysis under the dictates of *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). *See Fry v. Pliler*, 551 U.S. 112, 127 S.Ct. 2321, 168 L.Ed.2d 16 (2007) (*Brecht* standard applies even if state court did not apply *Chapman* harmless error on direct review or did not apply harmless error review at all.); *Kittelson v. Dretke*, 426 F.3d 306, 320-21 (5th Cir. 2005); *Nixon v. Epps*, 405 F.3d 318, 328-332 (5th Cir. 2005), *cert. denied*, 546 U.S. 1016, 126 S.Ct. 650, 163 L.Ed.2d 528, *reh. and stay of execution denied*, 546 U.S. 1083, 126 S.Ct. 843, 163 L.Ed.2d 720 (2005); *Billiot v. Puckett*, 135 F.3d 311 (5th Cir. 1998), *cert. denied*, 525 U.S. 966, 119 S.Ct. 413, 142 L.Ed.2d 336 (1998). Any constitutional error found, must be subjected to an analysis of whether the "error had a substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. at 637.

24

Further, in *Johnson v. McCotter*, 803 F.2d 830 (5th Cir. 1986), the Fifth Circuit held:

"A claim of ineffective assistance of counsel, once raised, litigated and rejected at an earlier habeas proceeding cannot be raised in a later proceeding merely by varying the factors allegedly demonstrating incompetency." . . . . *Passman* does not allow the reassertion of claims for the sole reason that petitioner has now thought of another argument in support of the same claim.

803 F.2d at 833.

*See Schouest v. Whitley*, 927 F.2d 205, 208 (5th Cir. 1991); *Molina v. Rison*, 886 F.2d 1124,

1128 (9th Cir. 1989); *Raulerson v Wainwright*, 753 F.2d 869, 873 (11th Cir. 1985); *Sinclair*

*v. State of Louisiana*, 679 F.2d 513, 515 (5th Cir. 1982); *McDonald v. Estelle*, 590 F.2d 153,

155 (5th Cir. 1979); *Cunningham v. Estelle*, 536 F.2d 82, 83 (5th Cir. 1976). Petitioner has

presented claims of ineffective assistance in which he has seemingly attempted to vary the

factors underlying the ineffective assistance of counsel claims raised on post-conviction

review. This he cannot do.

In order for habeas relief to be granted to petitioner, this Court must find that the State

court resolution of the claims raised were contrary to or involved an unreasonable

application of, clearly established Federal Law, as determined by the Supreme Court.

*Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Jones v.*

*Dretke*, 375 F.3d 352, 354 (5th Cir. 2004).

Respondents would further point out that petitioner is not entitled to an evidentiary

hearing on any of the claims presented in this petition. The AEDPA provides:

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –

(A) the claim relies on –

    (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

    (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.

Thus, any factual basis of King's claims not developed in the State court proceedings do not fall into either of the exceptions noted by §2254. King is not entitled to an evidentiary hearing at which evidence may be offered concerning the factual allegations raised in the petition. Such a hearing would be contrary to the dictates of the AEDPA. The petitioner is likewise not entitled to an evidentiary hearing to further develop facts not developed at trial, on direct appeal or state post-conviction review.

Additionally, many of the substantive claims King presents here were held to be procedurally barred from consideration on direct appeal or state post-conviction review. Thus, this Court is similarly barred from consideration of these claims as they rest on the adequate and independent state law ground of procedural bar or waiver. *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Ylst v. Nunnemaker*, 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). In those instances where the state court has imposed a procedural bar and then gone

on to address the merits of the claim, the procedural bar must be recognized by this Court as a bar to consideration of the merits of that claim. *See Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).

Additionally, in the context of ineffective assistance of counsel claims, in *Johnson v. McCotter*, 803 F.2d 830 (5th Cir. 1986), the Fifth Circuit held:

> "A claim of ineffective assistance of counsel, once raised, litigated and rejected at an earlier habeas proceeding cannot be raised in a later proceeding merely by varying the factors allegedly demonstrating incompetency." . . . . *Passman* does not allow the reassertion of claims for the sole reason that petitioner has now thought of another argument in support of the same claim.

803 F.2d at 833.

*See Schouest v. Whitley*, 927 F.2d 205, 208 (5th Cir. 1991); *Molina v. Rison*, 886 F.2d 1124, 1128 (9th Cir. 1989); *Raulerson v Wainwright*, 753 F.2d 869, 873 (11th Cir. 1985); *Sinclair v. State of Louisiana*, 679 F.2d 513, 515 (5th Cir. 1982); *McDonald v. Estelle*, 590 F.2d 153, 155 (5th Cir. 1979); *Cunningham v. Estelle*, 536 F.2d 82, 83 (5th Cir. 1976). In several instances in this habeas petition the petitioner has attempted to vary the factors underlying the ineffective assistance of counsel claims raised on post-conviction review. These variations for finding ineffectiveness of counsel cannot be considered.

In *Gray v. Netherland*, 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996), the United States Supreme Court held:

> . . . Title 28 U.S.C. § 2254(b) bars the granting of habeas corpus relief "unless it appears that the applicant has exhausted the remedies available in the courts of the State." Because "[t]his requirement . . . refers only to remedies still available at the time of the federal petition," *Engle v. Isaac,* 456 U.S. 107, 125, n. 28, 102 S.Ct. 1558, 1570, n. 28, 71 L.Ed.2d 783 (1982), it is satisfied "if it

is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law," *Castille v. Peoples,* 489 U.S. 346, 351, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989). However, the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default. *Teague v. Lane, supra,* at 298, 109 S.Ct., at 1068-1069; *Isaac, supra,* at 125, n. 28, 129, 102 S.Ct., at 1570, n. 28, 1572; *Wainwright v. Sykes,* 433 U.S. 72, 90-91, 97 S.Ct. 2497, 2508-2509, 53 L.Ed.2d 594 (1977).

518 U.S. at 161-162.

Earlier in *Teague v. Lane*, 489 U.S. 288 (1989), the Court held:

. . . "It is well established that 'where an appeal was taken from a conviction, the judgment of the reviewing court is *res judicata* as to all issues actually raised, and those that could have been presented but were not are deemed waived.'" *People v. Gaines,* 105 Ill.2d 79, 87-88, 85 Ill.Dec. 269, 274, 473 N.E.2d 868, 873 (1984) (citation omitted), *cert. denied*, 471 U.S. 1131, 105 S.Ct. 2666, 86 L.Ed.2d 282 (1985). The default prevents petitioner from raising the *Swain* claim in collateral proceedings under the Illinois Post-Conviction Act, Ill. Rev. Stat., ch. 38, ¶ 122-1 *et seq.* (1987), unless fundamental fairness requires that the default be overlooked. *People v. Brown,* 52 Ill.2d 227, 230, 287 N.E.2d 663, 665 (1972).

The fundamental fairness exception is a narrow one, and has been applied in limited circumstances. Compare *People v. Goerger,* 52 Ill.2d 403, 406, 288 N.E.2d 416, 418 (1972) (improper instruction on reasonable doubt "does not constitute such fundamental unfairness as to obviate the *res judicata* and waiver doctrines"), with *People v. Ikerd,* 47 Ill.2d 211, 212, 265 N.E.2d 120, 121 (1970) (fundamental fairness exception applies "where the right relied on has been recognized for the first time after the direct appeal"), and *People v. Hamby,* 32 Ill.2d 291, 294-295, 205 N.E.2d 456, 458 (1965) (fundamental fairness exception applies to claims that defendant asked counsel to raise on direct appeal). It is clear that collateral relief would be unavailable to petitioner. *See People v. Beamon,* 31 Ill.App.3d 145, 145-146, 333 N.E.2d 575, 575-576 (1975) (abstract of decision) (not invoking fundamental fairness exception and holding that *Swain* claim not raised on direct appeal could not be raised for the first time in collateral proceedings). As a result, petitioner has exhausted his state remedies under 28 U.S.C. § 2254(b) with respect to the *Swain* claim. See *Engle v. Isaac,* 456 U.S. 107, 125-126, n. 28, 102 S.Ct. 1558,

28

15701571, n. 28, 71 L.Ed.2d 783 (1982); *United States ex rel. Williams v. Brantley,* 502 F.2d 1383, 1385-1386 (CA7 1974).

Under *Wainwright v. Sykes,* 433 U.S. 72, 87-91, 97 S.Ct. 2497, 2506-2509, 53 L.Ed.2d 594 (1977), petitioner is barred from raising the *Swain* claim in a federal habeas corpus proceeding unless he can show cause for the default and prejudice resulting therefrom. See *Engle v. Isaac, supra,* 456 U.S., at 113-114, 117, 124-135, 102 S.Ct., at 1564-1565, 1566, 1570-1576 (applying procedural default rule to claim that had never been raised in state court). Petitioner does not attempt to show cause for his default. Instead, he argues that the claim is not barred because it was addressed by the Illinois Appellate Court. Cf. *Caldwell v. Mississippi*, 472 U.S. 320, 327- 328, 105 S.Ct. 2633, 2638-2639, 86 L.Ed.2d 231 (1985). We cannot agree with petitioner's argument. The Illinois Appellate Court rejected petitioner's Sixth Amendment fair cross section claim *without* mentioning the Equal Protection Clause on which *Swain* was based or discussing whether *Swain* allows a prosecutor to be questioned about his use of peremptory challenges once he volunteers an explanation. See *People v. Teague,* 108 Ill.App.3d, at 895-896, 64 Ill.Dec., at 405, 439 N.E.2d, at 1070. Accordingly, we hold that petitioner' *Swain* claim is procedurally barred, and do not address its merits.

Our application of the procedural default rule here is consistent with *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989), which holds that a "procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar" (citations and internal quotations omitted). The rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding. It is simply inapplicable in a case such as this one, where the claim was never presented to the state courts. *See id.,* at 268- 270, 109 S.Ct., at 1046-1047 (O'CONNOR, J., concurring).

489 U.S. at 297-299.

In *Ruiz v. Quarterman*, 460 F.3d 638 (5th Cir. 2006), the Fifth Circuit recently held:

The exhaustion doctrine of 28 U.S.C. § 2254(b)(1) codifies long-developed principles of comity.[8] Before a federal court can find merit in alleged errors by state courts, *a petitioner must have first provided the state's highest court with a fair opportunity to apply (1) the controlling federal*

*constitutional principles to (2) the same factual allegations.*[9]  This requirement is designed to give state courts the initial opportunity to pass upon and, if necessary, correct errors of federal law in a state prisoner's conviction or sentence.[10]  The purpose of exhaustion "is not to create a procedural hurdle on the path to federal habeas court, but to channel claims into an appropriate forum, where meritorious claims may be vindicated and unfounded litigation obviated before resort to federal court."[11]

A fair opportunity requires that all the grounds of the claim be first and "fairly presented" to the state courts.[12]  *In other words, in order for a claim to be exhausted, the state court system must have been presented with the same facts and legal theory upon which the petitioner bases his current assertions.*[13]  *"[I]t is not enough . . . that a somewhat similar state-law claim was made."*[14]  *An argument based on a legal theory distinct from that relied upon in the state court does not meet the exhaustion requirement.*[15]  *"Exhaustion 'requires a state prisoner to present the state courts with the same claim he urges upon the federal courts.'"*[16]  AEDPA excuses these requirements only if the petitioner shows "(I) there is an absence of available state remedies in the courts of the State, or (ii) circumstances exist that render such processes ineffective to protect the rights of the applicant."[17]

Furthermore, where a petitioner has failed to exhaust claims in state court, and that failure would now result in the state procedurally rejecting those claims, the petitioner has procedurally defaulted the claims and we must find them procedurally barred.[18]  Exceptions to procedural default exist where the petitioner shows "cause and actual prejudice" or that application of the procedural bar will result in a "fundamental miscarriage of justice."[19]

_____

8. *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 8-10, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992); *Picard v. Connor*, 404 U.S. 270, 275, 277-78, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Dowthitt*, 230 F.3d at 745-46.

9. *Duncan v. Henry*, 513 U.S. 364, 365-66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995); *Rose v. Lundy*, 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); *Thomas v. Collins*, 919 F.2d 333, 334 (5th Cir.1990).

10. *Picard*, 404 U.S. at 275-76, 92 S.Ct. 509.

11. *Keeney*, 504 U.S. at 10, 112 S.Ct. 1715.

12. *Picard*, 404 U.S. at 275, 92 S.Ct. 509.

13. *Id*. at 275-77, 92 S.Ct. 509.

14. *Wilder v. Cockrell*, 274 F.3d 255, 260 (5th Cir.2001) (citing *Anderson*, 459 U.S. at 6, 103 S.Ct. 276).

15. *Id*. at 259 (citing *Vela v. Estelle*, 708 F.2d 954, 958 n. 5 (5th Cir.1983)).

16. *Id*. at 261 (citing *Picard*, 404, U.S. at 276, 92 S.Ct. 509).

17. 28 U.S.C. § 2254(b)(1)(b).

18. *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

19. *Id*. at 750, 111 S.Ct. 2546.

460 F.3d at 642-43. [Emphasis added.]

As clarified above, similar claims will not suffice to satisfy the exhaustion requirement, the claims must be the same claim raised on the same legal and factual basis. Respondents would submit that any claim that has not been fairly presented to the state courts is unexhausted.

Any claim of the petitioner which has not been fairly presented to the state courts is unexhausted and cannot now be exhausted under the provisions of Miss. Code Ann. § 99-39-5 (2) and § 99-39-27 (9). Therefore, this Court must hold any such claims to be procedurally barred from consideration on federal habeas review.

Respondents assert that the claim presented by petitioner in Ground G., claiming the trial court was in error for not instructing the jury regarding statutory mitigating

circumstances[6], has not been exhausted before the state courts. Furthermore, when the petitioner furnishes a memorandum of authorities in support of the petition and if the arguments he raises therein were not presented to the state courts, the respondents reserve the right to contend that such claims are likewise unexhausted. The respondents do not waive exhaustion on any claim presented in this petition for writ of habeas corpus. *See* 28 U.S.C. § 2254(b)(3).

Respondents have denied that any of these claims entitle petitioner to relief. Respondent will gladly respond to a proper memorandum of authorities once filed by petitioner.

Finally, with the exception of the aforementioned Ground G. claim, it appears that the claims petitioner is raising before this Court are those previously presented to the State courts. The respondents would submit that the resolution of those claims by the Mississippi Supreme Court are not contrary to or an unreasonable application of established precedent as announced by the United States Supreme Court, nor do they represent an unreasonable application of the established precedent to the facts of this case. King is entitled to no habeas relief.

## CONCLUSION

1.     The claims presented for habeas review in this petition do not present issues on which habeas relief can be granted under the AEDPA, the precedent of the Fifth Circuit or the United States Supreme Court.

---

[6]See Pet. at 47.

32

2.      Since petitioner has not filed a separate memorandum of authorities in support of his petition for writ of habeas corpus, respondent would submit that he has nothing to respond to by filing a separate memorandum of authorities at this time and reserves the right to do so after petitioner has filed a memorandum of authorities.

3.      Copies of the state court trial court transcript, all briefs filed in state court and in the United States Supreme Court by both the petitioner and respondents will be forwarded to the Court as soon as they can be copied.

4.      Respondents are of the opinion that petitioner has exhausted all available state court remedies on the issues raised and that further resort to state court in the future would be futile.  However, if any claim presented to this Court has not been exhausted the State does not waive exhaustion as explained above.

Wherefore, **PREMISES CONSIDERED**, the respondents respectfully move that this Court deny any evidentiary hearing requested, deny discovery, dismiss the petition for writ of habeas corpus filed herein with prejudice, vacate any stay of execution previously entered and to deny petitioner a certificate of appealability to appeal this matter to the United States Court of Appeals for the Fifth Circuit.

Respectfully submitted,

**JIM HOOD**
ATTORNEY GENERAL
STATE OF MISSISSIPPI

**MARVIN L. WHITE**
ASSISTANT ATTORNEY GENERAL
Miss. Bar No. 7149

33

**JASON L. DAVIS**
SPECIAL ASSISTANT ATTORNEY GENERAL
Miss. Bar No. 102157
*(Counsel of Record)*

BY:   *s/ Jason L. Davis*

OFFICE OF THE ATTORNEY GENERAL
Post Office Box 220
Jackson, Mississippi 39205
Telephone:  (601) 359-3680
jdavi@ago.state.ms.us

## CERTIFICATE OF SERVICE

This is to certify that I, Jason L. Davis, Special Assistant Attorney General for the State of Mississippi, have electronically filed, ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2254 BY A PERSON IN STATE CUSTODY UNDER SENTENCE OF DEATH to the following:

Merrida Coxwell
500 North State Street
Jackson, MS 39201

Stacy Ferraro
P.O. Box 708
Flora, MS 39701

This, the 17th day of February, 2010.

s/ *Jason L. Davis*